Stephen Albert McCOY, Appellant,

v.

The STATE of Texas, Appellee.

No. 69331.

Court of Criminal Appeals of Texas,
En Banc.

June 18, 1986.

James Stafford, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & William J. Delmore, III & George Lambright, Asst. Dist. Atty's., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

Appellant was convicted of capital murder, V.T.C.A. Penal Code, § 19.03. The death penalty was imposed after the jury answered affirmatively the special issues

submitted under Art. 37.071, V.A.C.C.P. Appellant does not contest the sufficiency of the evidence to support the conviction or sentence, but brings thirteen grounds of review before this Court. Because of the nature of the grounds of error, a review of the facts is unnecessary. We will affirm.

In grounds of error numbers six and seven, appellant contends that the trial court erred in failing to strike for cause veniremen Hortense Webb and Nancy Davenport, respectively, because their testimony indicated that they would be unable to properly apply the law and disregard an illegally obtained confession. Challenges for cause were made after each of the two prospective jurors expressed reluctance to disregard a confession solely because of a "technicality," such as officers' failure to provide a defendant with an attorney. We will consider these two grounds together.

When questioned by defense counsel, Webb stated that she would be able to disregard a confession if there was evidence that the defendant had been beaten by the police. The record reflects the following testimony on further voir dire examination:

"Q. [BY DEFENSE COUNSEL] ... Let's take my hypothetical where they have the defendant in jail. He says, I want my lawyer. I don't want to talk to you. I want my lawyer. They give him all the time—well, they give him an hour to make his phone calls, get his lawyer. He can't get his lawyer. The detective just finally wears him down, says, come on, we know you are in this, we know you are involved somehow. You know, we've got some witnesses against you. Finally he gives a confession. But because of all that evidence that was presented to you, you are not convinced beyond a reasonable doubt that he freely and voluntarily waived his Constitutional rights not to talk to the police officer. So if that is the case, then the law says you must ignore the confession because you are not convinced beyond a

reasonable doubt that that was a proper confession.

"A. I probably could do it that way, that if if [sic] it was really reasonable doubt that he had given that confession freely, then I could forget the whole thing.

"Q. You can ignore it?

"A. Right.

"Q. Even though the reasonable doubt was put there by a technicality and not on—you know, the easy one is it was beaten out of him.

"A. Yeah.

"Q. But let's go to the hard one. The reasonable doubt was put there by a technicality, a simple thing like getting a hold of his lawyer.

"A. No, No, I couldn't on a technicality. I don't believe I could.

"Q. You could not erase that confession?

"A. I don't believe I could.

MR. RODRIGUEZ [defense counsel]: We will make our motion, Your Honor.

EXAMINATION

"BY THE COURT:

"Q. I think, Miss Webb, what you are saying is this: Just put to you under the hypothetical that Mr. Rodriguez put it to you, a confession to be admissible to you has to be freely, voluntarily and intelligently given, okay?

"A. Okay.

"Q. You've already acknowledged that if the evidence was, hypothetically, that the police rubber-hosed a confession out of somebody, you wouldn't have any trouble with that. If you believed or had a reasonable doubt that that's what they did, you could disregard that confession because it was beat out of the man and he didn't freely and voluntarily give it?

"A. Right.

"Q. Now, that's not permissible and also it's not permissible to take a confession from a person who is telling you all the time, well, I want to talk to my lawyer. But the hypothetical that Mr. Rodriguez gave you had to do with a

defendant saying, I want to talk to my lawyer. Maybe the lawyer is out of town or something but they didn't get him and there wasn't any beating or anything or promises but periodically the detective would come back and say, well, we can't find your lawyer and you can't find your lawyer. Do you want to talk to us? And finally the guy says, yeah. Your trouble is, as I understand it, when you got into the trial of a case, if hypothetically those were the facts, what you are telling Mr. Rodriguez is, I would still believe beyond a reasonable doubt that he freely, voluntarily and intelligently gave a confession?

"A. But he did.

"Q. Well, if you believe that, then you can go ahead and consider what the confession says. It's only a time when you don't believe or have a reasonable doubt that it was freely and voluntarily and intelligently given that you are instructed to disregard it. Do you understand? So maybe we are talking about apples and oranges.

"A. We may be.

"Q. Or who comes first, the hen or the egg. First you got to make a determination in your mind, did this defendant freely and voluntarily and intelligently give this confession. And I think the problem between you and Mr. Rodriguez is under his hypothetical you are going to have a hard time believing that that defendant didn't freely, voluntarily and intelligently give a confession.

"A. Right.

"Q. So you are over the hump. Then you can consider the confession.

"A. Right.

"Q. Because really what you are saying, all the defendant had to say one more time to the detective—

"A. Was I want my lawyer. That's what I'm saying, because once he says it of his own free will and he confesses, then he's done it of his own free will.

"Q. You might very well believe, on the other hand, as some jurors, that that man would not have given that confession and what makes it not freely and voluntarily and intelligently is he just was consistently harassed by that police officer, detective to give me a confession, give me a confession and they just wore him down. Somebody might believe that.

But the bottom-line question is this: If you didn't believe or you had a reasonable doubt as to whether a confession was elicited from a defendant against his will, involuntarily and unintelligently given, could you, even though you believe the confession, could you throw it out of your mind and set it aside?

"A. Yes, I could.

THE COURT: Challenge overruled.

EXAMINATION

"BY MR. RODRIGUEZ:

"Q. And that's, again, even though you thought it was a technicality but that convinced you that the defendant had not voluntarily and intelligently waived his rights and given that confession?

"A. Yes. Right.

"Q. And you would have no problem in excluding the confession if you had some reasonable doubts whether or not he was tricked into doing it?

"A. That I could forget it then if I felt he was not beaten or, I mean, if he was.

"Q. Let me say this: If a confession is beaten out of somebody, you might have cause to believe that maybe that's not a reliable confession, maybe that's not true and maybe you would confess to anything.

"A. That's right.

"Q. So that's easy to see why you would exclude it. If they trick it out of him, maybe it's a little suspect as well but not quite as much. Let's say you had some reasonable doubts as to whether or not it was tricked out of him but you believe the confession. There is no doubt he had done it and he was

confessing to it but, there again, you had some doubts as to the voluntariness of it because you thought maybe he was tricked into it.

"A. Then I could forget it.

"Q. And if there was no other evidence to support a conviction, then you would cut a murderer loose?

"A. I guess I would.

When questioned by the prosecutor, prospective juror Davenport indicated that she would be able to disregard an illegally obtained confession. Afterward, the following testimony was given:

"Q [BY DEFENSE COUNSEL] ... I know the law says otherwise but that's a technicality and I'm tired of people getting off on technicalities and I'm not going to do that. Now, I need to know how Miss Davenport feels about that?

"A. That's a tough one because I am tired of it. I don't know. I don't know.

"Q. There again, as the judge says, "I don't know" answers or "I think so" answers scare us because it may happen, it may come to pass that you are in that situation and we are stuck with a juror that the best they can do, I don't know, I have to tell you when I get there. Then it's too late.

"A. I think I'd stick with the confession, to tell you the truth.

"Q. I'm sorry?

"A. I think I'd stick with the confession. MR. RODRIGUEZ: We will challenge, Your Honor.

.    .    .    .    .

"Q. [BY DEFENSE COUNSEL] ... So that's a situation where the confession was tricked out of the defendant but, on the other hand, you believe it is true, you got your man. There is no doubt about it, you believe that confession but you think he was tricked. Now how do you feel? Could you ignore that confession and, if you have to, set that man free if the State doesn't bring you enough evidence otherwise?

"A. If I think that he was tricked and if the State does not bring enough evidence otherwise to prove him guilty, I could set him free, yes.

"Q. You could?

"A. Those two things, if I really truly believed that he was tricked and if the evidence was not there to convict him.

.    .    .    .    .

"Q. [By Prosecutor] ... So basically the test is, if you hear the facts as to the voluntariness of a confession and after having heard those facts presented to you by the State, if they don't convince you beyond that reasonable doubt, in other words, if you still reasonably doubt the voluntariness of the confession, you have to set it aside and not consider it. And if you do reasonably doubt the voluntariness of the confession, I take it that you could disregard it?

"A. Yes.

Appellant's challenges for cause were overruled by the trial court.

Article 35.16(c)(2), V.A.C.C.P. authorizes the trial court to exclude on a defendant's challenge for cause any prospective juror who has a bias against any law upon which the defendant is entitled to rely. Certainly, if a potential juror was unable to disregard an unlawfully obtained confession, he or she would be subject to exclusion on proper challenge. *Barney v. State*, 698 S.W.2d 114 (Tex.Cr.App.1985); and *Pierce v. State*, 696 S.W.2d 899 (Tex.Cr.App.1985).

The testimony in the case before us is similar to the testimony presented in *Barney*, supra. In that case, a potential juror initially indicated that he could disregard an illegally obtained confession and not consider it for any purpose. Later during the examination, however, and when faced with more difficult questions, the potential juror indicated that he could not acquit a defendant despite an invalid confession. When questioned by the prosecutor, the juror later indicated that he could follow the law and disregard the confession. We held that, despite the equivocation, the tes-

timony indicated that the potential juror was capable of following the law, and the trial court did not err in denying the challenge for cause.

The testimony in the case at bar shows that at first, prospective juror Webb could not disregard an illegal confession on a "technicality" and acquit a defendant. Later during the questioning, however, she indicated that she could follow the law and ignore a confession that was not given voluntarily. Likewise, the testimony of prospective juror Davenport initially indicated that she would "stick with the confession," even though it had been illegally obtained. Later in the examination, however, she stated that she would follow the law and disregard an invalid confession.

■ In evaluating a prospective juror's responses, we recognize that we are faced with only a cold record; therefore, we give deference to the trial judge who is in a position to see and hear the juror. *Bird v. State*, 692 S.W.2d 65 (Tex.Cr.App. 1985). See also *Phillips v. State*, 701 S.W.2d 875 (Tex.Cr.App.1985); *Barney*, supra; and *Franklin v. State*, 693 S.W.2d 420 (Tex.Cr.App.1985). This rule is especially appropriate when we are faced with seemingly equivocating responses. According such due deference to the trial court's position to assess the jurors' demeanor and sincerity in the case before us, and based upon the testimony presented, we find that prospective jurors Webb and Davenport were not subject to a challenge for cause despite their initial responses. Thus, the trial court did not err in overruling appellant's challenge. Appellant's sixth and seventh grounds for review are overruled.

In grounds of error numbers nine and ten, appellant contends that the trial court erred in overruling his challenges for cause to prospective jurors Pamela Pilcher and Wilhelmina Small because their testimony reflected that under no circumstances could they answer the Art. 37.071(b), V.A.C.C.P. special issues negatively. We will consider these grounds together.

The record shows the following testimony was given during the voir dire examination of prospective juror Pilcher:

Q. [by defense counsel]—can you conceive of any situation whereby you would answer that special issue number one "no"?

A. No, I don't—I couldn't pull it out of the air right now, no.

Q. Maybe you didn't understand my question.

A. I probably didn't.

Q. Okay. Let's talk about it a minute. That issue merely asks you whether or not the conduct of the defendant was deliberate and with reasonable expectation.

A. Okay.

Q. Of course, before you can find someone guilty of capital murder, you've got to find that they intentionally did at least two things, the robbery and a murder or rape and murder, whatever. And because of that finding, let's assume that you were to sit in trial and find someone guilty of capital murder, do you feel compelled that you should answer special issue number one "yes" in each and every case because of that finding?

A. It would have to be whether all of the things were proven.

Q. Well—

A. Yes. If they are proven, yes.

Q. But I want to make sure, proven as to the issue or proven as to the case in chief?

A. The case.

Q. Well, let's assume that you had found all of the evidence beyond a reasonable doubt and had convicted, in other words, all the proof was there. There was an intentional killing, because that's all the law requires, an intentional act and not a deliberate act before you can find someone guilty of, let's say, capital murder. The question I have is, because of that finding would you feel compelled to answer special issue number one "yes" having previously found that individual guilty

of capital murder in each and every case?

A. Yes.

Q. Could you ever envision a situation whereby you would answer that question "no" if, once again, the hypothetical is you already found that person guilty of capital murder?

A. I could not envision one.

.    .    .    .    .

Mr. Vela [defense counsel] Your honor, at this time the defense would challenge this venireman for cause with reference to her responses to the special issue number one.

THE COURT: Have a seat, sir.

BY THE COURT:

Q. Miss Pilcher?

A. Yes, sir.

Q. I direct your attention to special issue number one. If you would, read that one more time to yourself.

A. All right.

Q. Now, you've got to understand that's a two-part question. The first part of it asked you did the defendant act deliberately.

A. Yes.

Q. And then it says, and with a reasonable expectation that the death of the deceased or another would result. Okay. Mr. Vela asked you if you can envision a set of circumstances to where—well, first you said if you found the defendant guilty of capital murder, you would automatically answer that question "yes" without any to-do about it. And he asked could you envision a set of facts where you might not answer it "yes". You said, no, you couldn't. So let me envision a set of facts for you, and you apply this set of facts to that question and tell us how you would answer it.

A. All right.

Q. A person goes into a convenient [sic] store and robs a clerk. The clerk's there by himself. The robber upon leaving doesn't want the clerk running down the street hollering and chasing him to draw attention to him so he shoots the clerk in the leg deliberately and then he takes off. Unfortunately, the clerk before help gets there bleeds to death from the leg wound and he dies. That person is charged with capital murder because he intentionally robbed the place and he intentionally shot the clerk and there was a death. Those ingredients make a capital murder.

But take those set of facts and apply it to that question. Assuming those facts are true, how would you answer that question?

A. Well, he didn't expect the death.

Q. He did not expect the clerk to die.

A. Right.

Q. So, you see, I could go on and on with examples, but there is no such thing as that question being answered automatically "yes".

A. Not—well, I was confused.

Q. It would depend on what the facts were about how the whole thing went down, wouldn't it?

A. Yes.

Q. Now, is your response then to Mr. Vela's question now that, no, I would not automatically answer special issue number one "yes"?

A. Yes.

The trial court overruled appellant's challenge for cause to prospective juror Pilcher based upon "her responses to the special issue number one."

During the voir dire examination of prospective juror Small, the following testimony was given:

Q. [BY DEFENSE COUNSEL] Can you conceive of a case where you wouldn't automatically answer it "yes"? Can you conceive of a case where you might answer it "no"?

A. No.

MR. RODRIGUEZ: We'll make our motion, Your Honor.

EXAMINATION BY MR. LAMBRIGHT:

Q. Special issue number one, with regard to what Mr. Rodriguez is saying, is

correct in the sense it does require you to look back once again at the evidence that you heard during the trial on guilt on [sic] innocence. It doesn't use the same terminology as is stated in the indictment. In other words, instead of using the word intentional it uses the word deliberate. Would you agree there is a difference between acting deliberate and acting intentionally, although it may be a very small difference, but there is a difference between the two words? If the Legislature wanted you to just look and say, is it intentional, obviously they would have put intentional in there. Would you agree with me there is a difference?

A. There is a slight difference, but I would say it equals out to the same thing.

Q. Would you agree just because someone acted intentionally, that in every situation they are not going to be acting deliberately? In other words, the same evidence show [sic] you both issues, but just because someone does act intentionally, doesn't necessarily automatically mean they are going to act deliberate. And just because someone intentionally caused the death of someone else doesn't mean there is a reasonable expectation of causing the death.

For example, in our situation we went over previously, if I went into the bank and robbed the teller and shot her in the little finger, even though I may be acting deliberately and I may deliberately shoot her in the little finger, there is no reasonable expectation of death as a result of that even though I may intend to kill her. Would you agree with that?

A. Yes.

Q. In that type of situation, at least, you could envision a situation where someone, although they act deliberately or intentionally, there is no reasonable expectation of death.

A. (Juror nods head affirmatively).

Q. I take it then just because you found someone guilty of capital murder, once again, would you agree, you would have to re-examine the evidence in special issue number one, make sure there is a deliberate act and make sure there is a reasonable expectation before you would answer "yes"?

A. Yes.

Q. I take it you wouldn't automatically answer special issue one "yes" just because you found someone guilty, you would have to look over the evidence again?

A. Right.

"MR. LAMBRIGHT: I think she is qualified.

"THE COURT: Challenge overruled.

EXAMINATION BY MR. RODRIGUEZ

. . . . .

Q. You can invision [sic] a situation, I'm sure, where the defendant may have shot the individual in the leg to keep from being chased. He had no intention of killing that person but aimed at his foot, let's say. He figures. If I shoot his foot, he's not going to follow me, you see.

A. Yes.

Q. I didn't intend to kill him. I didn't know he would bleed to death. I thought he would get help. I thought the worst that would happen is that he would have a hole in his foot.

A. I understand that.

Q. Again, we've envisioned that kind of situation where he didn't intend to kill. In that kind of situation you wouldn't find him guilty of capital murder because you would find that the intent to kill was missing. So that may be a situation where you find him guilty of aggravated robbery but not capital murder.

I want to take you back to a situation where the person intended to kill and he did and before you have found him guilty of capital murder. Now the law wants you to take that same evidence and find whether or not he acted deliberately, not just intentionally. A

lot of people say, well, that's just too close for me. I say if I'm convinced that he acted intentionally, then I'm going to answer special issue number one "yes" all the time. I think that's all how you feel. I just want you to verbalize that for me.

A. This is true.

Q. You would, when you found the defendant guilty, you would always answer issue number one "yes" regardless of anything else?

A. Yes.

Q. Is that your true feelings?

A. Yes.

MR. RODRIGUEZ: We would reurge the objection.

EXAMINATION BY THE COURT:

Q. Miss Small, I think we are just playing with some words, but you correct me if we are not. The indictment says, and any indictment would say this, this is not unique to this case, it is just a key word in our statute says, intentionally caused the death of the deceased. Evidently there is some difference or else if it hadn't been, the legislature would have put intentionally in the question instead of deliberately, do you agree?

A. I agree.

Q. Our law in defining intentionally just simply says that a person is responsible for what acts he commits and intent is presumed by what you do. You understand?

A. Yes.

Q. If I go into a bank and rob [sic] it and I don't intend for anybody to follow me or maybe identify me and I tell everybody, lay down on the floor, and then I shoot around up in the ceiling, I intentionally did that. Now, I'm going to be responsible under the law for whatever happens as a result of that. Well, unfortunately, it ricochets and goes down and kills a person. I've killed someone in the course of a robbery. That's capital murder. So a jury might find that I intentionally pulled the trigger of the gun, it ricocheted and killed somebody and I was in the course of a robbery and now I'm guilty of capital murder. You understand?

A. Yes.

Q. But when they get on punishment to special issue number one, they could find two different reasons not to answer "yes". One, I didn't deliberately mean to cause the death of anybody and I had no reasonable expectation that anybody would die. Do you follow me?

A. I sure do.

Q. Do you see how you could theoretically find somebody guilty of capital murder and very easily answer that question "no".

A. Yes.

Q. What?

A. Yes.

Q. Do you follow and you could follow the law?

A. I could follow it.

THE COURT: All right. It's overruled.

EXAMINATION BY MR. RODRIGUEZ:

Q. Let me see if I understand how we finally ended up on this. Are you saying now that you can envision a situation in which you would answer issue number one "no" after you found the defendant guilty of capital murder?

A. Yes. Like he said, he might have shot into a crowd or something like that and he didn't didn't [sic] intend to kill anyone.

Q. You see, if he didn't—if you didn't intend to kill anyone, you are not guilty of capital murder, is what I'm saying, because the indictment on capital murder says that he intentionally acted in causing the death of the complainant. And if the evidence develops such that he just shot into the air, then that's not intentionally acting to cause the death of the complainant. That might be committing an act clearly dangerous to human life if he shoots a gun into the air in a crowded room, you see? But it's not acting intention-

ally to cause the death of a complainant.

I know it's real hard for someone that's not used to the system to understand. We are splitting real fine hairs. But my hypothetical rests on the fact that you found the defendant acted intentionally and caused the death of the deceased and that's why we have found him guilty of capital murder. Under those circumstances where you have found him guilty of capital murder. Under those circumstances where you have found him guilty of capital murder, you've decided amongst your fellow jurors that he acted intentionally to take a life. Then can you imagine that situation where you take that same evidence and answer issue number one "no"?

A. I hate to have you do it but would you say that again? I want to be sure.

Q. And I appreciate that. The hypothetical that I'm using is one in which you have found the defendant guilty of capital murder, otherwise we would never turn to issue number one and two. So it goes without saying that you have already found this person guilty of capital murder. If that's so, then it goes without saying that you have found that he intentionally took the life of the deceased, you see, because that's what the indictment says, he intentionally caused the death, in this case, of Cynthia Darlene Johnson. Having said all that, and I think now you understand what the set of facts is, the imagined set of facts, he's been found guilty of capital murder, therefore, he must have acted intentionally and caused the death of the deceased. Now we turn to punishment. Can you envision a case such as that where you would find that he intentionally caused the death of someone and, when it comes to punishment, can you envision a set of circumstances like that where you would answer issue number one "no" or would you always, in the confine of that situation, always answer issue number one "yes"?

A. I believe I would answer it "yes".
MR. RODRIGUEZ: We reurge it, Your Honor.
THE COURT: Mr. Lambright?

EXAMINATION BY MR. LAMBRIGHT:

Q. Do you agree with me, ma'am, that there is a difference between the word intentional and deliberate?

A. Yes.

Q. So there is a difference?

A. Yes.

Q. Do you agree with me that although I may cause somebody's death—let's say I walked up to you and I say, I'm going to kill you, I want to kill you and I intend to kill you. The ways I'm going to do it, I'm going to shoot your finger off. I'm going to shoot you in the hand. Even though I may intend to kill you, that may not be an act that has a reasonable expectation of death.

For example, let's take the wording in the indictment. Let's say somebody goes up, rapes someone, puts a wire around their ankle, strangles their ankle for ten minutes. Although that might cause death, you might agree with me there is no reasonable expectation of death there?

A. Right.

Q. There is [sic] lots of situations. Someone may go out and may want to really kill them. Just because they acted intentionally, they may not have acted deliberately. Also, because they did kill them doesn't mean necessarily that whatever they did was reasonable expectation. It doesn't make any difference what you can imagine. The question is, if we don't prove that question should be answered "yes", would you answer it "no"? In other words, if we don't prove it should be answered "yes", we have the burden of proof, and you have to answer it "no".

A. No, right.

Q. Just because you found somebody intentionally killed somebody doesn't mean they acted deliberately. Just because somebody died because of a de-

liberate act doesn't mean there necessarily was a reasonable expectation of death. Strangling somebody around the ankle, shooting somebody's hand or little finger. You can see, just because someone intentionally caused death, number one, you found it was intentionally, that doesn't necessarily mean it was deliberate. I've already found it was intentional, but was it deliberate? If we don't prove it was deliberate, you have to answer it "no". Also we have to prove whatever that act was, there is a reasonable expectation that that type of act is going to cause death. So do you see now what we are talking about?

A. I believe I do see it. It's a very fine line.

Q. Obviously the same type of evidence that helps you answer this issue is going to help you answer that issue.

A. That's true.

Q. So it's going to be the exact same evidence. You are just going to look at it again. You look at it a little bit closer this time.

I take it you agree with me, there is a difference between intentional and deliberate?

A. Yes.

Q. Before you would find that special issue number one should be answered "yes", you would look to make sure the act was deliberate and you would also want to make sure there is a reasonable expectation of death, correct?

A. Yes.

Q. I take it you would not automatically answer special issue number one "yes"; is that correct?

A. No.

Q. And, in other words, you wouldn't automatically answer it "yes", it might be "yes", Lambright. We believe he intentionally caused the death because he screamed twenty times he was going to kill her, put that cord around her ankle. My God, there is no reasonable expectation that's going to cause the death. I think he acted intentional

[sic], but I don't think he acted deliberately. It could be that type of situation, too. I take it you would not automatically answer special issue number one "yes" just because you believe that someone is guilty of capital murder; is that correct?

A. Yes.

MR. LAMBRIGHT: I think she's qualified. She just misunderstood the question.

THE WITNESS: It's such a fine line. I'm sorry.

EXAMINATION

BY THE COURT:

Q. For the record, our papers are graded by some higher court. These lawyers and the court, too, has [sic] given you hypotheticals; and as a lay person I'm sure you didn't understand possibly what law is applicable. Can you see now that if special issue one was to be answered automatically "yes" by a juror, if they found somebody guilty of the offense of capital murder, the Legislature wouldn't have even had it there to start with? They would have just wrote [sic] in "yes" for you, wouldn't they?

A. That's right.

Q. So can you understand that the answer, "yes" or "no", to that question would have to be based on the evidence in a particular case?

A. Yes.

Q. My question is: If you were sitting as a juror and you found someone guilty of capital murder knowing what you know now, would you automatically answer special issue "yes" just because you had found him guilty of capital murder?

"A. No.

THE COURT: All right. It's overruled.

Reiterating appellant's grounds of error numbers nine and ten, they make the contention that the trial court erred in overruling his challenges for cause to prospective

jurors Pamela Pilcher and Wilhelmina Small because their testimony reflected that under no circumstances could they answer the Art. 37.071(b), V.A.C.C.P. special issues negatively. Appellant further maintains in his brief that "all attempts to rehabilitate these two prospective jurors were ineffective because the trial judge failed to separate in his questions the two separately defined words ['']intentional['] and ['']deliberate[']". As to this latter contention we find that the record does not support appellant. The trial judge did separate his questions with regard to these two terms.[1]

■ As to the former contention, the testimony of prospective juror Pilcher shows that she did initially state that she could not envision a situation where she could answer the first special issue "no" if the defendant had already been found guilty. She later indicated that she would not automatically vote "yes" to the first special issue. Simply because a juror is unable to conceive of or envision a situation wherein he or she would respond "yes" or "no" is not automatically grounds for reversal. See *Phillips*, supra. We must examine the record as a whole to determine whether the juror was truly disqualified, and assay the testimony with deference to the trial court. *Brandley v. State*, 691 S.W.2d 699 (Tex.Cr.App.1985). Based upon Pilcher's testimony, we find that the trial court did not err in overruling appellant's challenge for cause. Appellant's ninth ground of error is overruled.

■ Also, the testimony presented by prospective juror Small indicates that, similar to prospective juror Pilcher, initially she could not "conceive of a case" where she would answer the first special issue "no." When this response was given, appellant's counsel stated "We'll make our motion." The trial court interpreted counsel's remark to constitute a challenge for cause. In appellant's brief, he complains that the challenge was improperly overruled because prospective juror Small had a

bias against the law upon which appellant was entitled to rely.

We hold that despite her first response, the juror did not exhibit such a bias against the law upon which appellant was entitled to rely to the extent that the trial court erred in overruling appellant's challenge. See discussion, supra; see also *Phillips*, supra. Moreover, the prospective juror did not understand the questions at first; once she understood what she was being asked, she did not vacillate from her position that she would follow the law. We note that her testimony must be considered with deference to the trial judge, who was in a better position to determine her intended meaning. See *Barney*, supra; *Franklin*, supra; *Bird*, supra; *Garza v. State*, 622 S.W.2d 85 (Tex.Cr.App.1981) (opinion on rehearing); *Tezeno v. State*, 484 S.W.2d 374 (Tex.Cr.App.1972). The trial court did not err by overruling appellant's challenge for cause. Appellant's tenth ground of error is overruled.

■ In ground of error number two, appellant contends that the trial court erred in the manner in which it conducted the voir dire examination of prospective juror Eulalio Rocha. Appellant asserts that the trial court conducted a "mechanistic" approach to the voir dire examination, which resulted in insufficient evidence to justify exclusion of the prospective juror on the State's challenge for cause. He further asserts, without supporting authority, that the conduct of the trial court resulted in reversible error.

Although we are unsure of the precise nature of appellant's objection, we will consider the testimony and determine whether the prospective juror was improperly excluded. During the voir dire examination, the following testimony was presented:

"Q. [BY PROSECUTOR] Now, do you have any conscientious, religious or moral scruples against the infliction of death as a punishment for a crime in a proper case?

"A. Yes.

---

1. We do not endorse the specific examples used in the preceding testimony to illustrate the difference between the terms "intentional" and "deliberate."

"Q. Sir?

"A. Yes, sir.

"Q. Well, what is it, conscientious or religious or moral, or is it all three?

"A. All three of them.

"Q. You under no circumstances feel like you could give the death penalty for a crime?

"A. No, sir.

"Q. No matter what type of crime we are speaking of?

"A. No matter what kind.

"Q. Sir?

"A. No matter what kind.

.      .      .      .      .

"Q. [BY PROSECUTOR] I appreciate what you are saying, Mr. Rocha, and your honesty is to be commended because that's exactly what we want in this case. We want some jurors that will be honest with us. In other words, I take it you wouldn't have any problems in a capital murder case finding someone guilty, in other words, just saying that they did it, but you couldn't give them the death penalty; is that right?

"A. That's correct.

"Q. So let's take a fact situation and let's take the most aggravated, horrible fact situation you could probably think of, like a minute ago I said let's say in order to commit a capital murder somebody goes into a bank and they rob a young teller, a young female teller and they stick a gun up her throat and they pull the trigger, so there is no question but that it was deliberate and there was a reasonable expectation of death by shooting up the mouth. And let's take a horrible situation with regard to special issue number two. Let's say this person, it's been proved to you that, because they confessed to it, that they killed five other people over the last ten years the same exact way. In other words, in that situation there is no doubt but that the proper answers to those questions should be "yes". Would you agree with me? But because of your religious belief—

"A. Uh-huh.

"Q. —you would answer one of those questions "no"; is that correct?

"A. Right.

"Q. Because of your religious belief opposing the death penalty; is that correct?

"A. That's right.

"MR. LAMBRIGHT: We make a challenge for cause, Your Honor.

.      .      .      .      .

"Q. [BY DEFENSE COUNSEL] To put it another way, could you ever answer special issue number one "yes" if you believed that that was true beyond a reasonable doubt? Number one, if you believe that was true, could you answer it "yes"?

"A. Well, I could answer it "yes" but I don't think I don't believe in the death penalty.

"Q. Do what?

"A. I don't believe in the death penalty.

.      .      .      .      .

"Q. So if you are put in that situation under any circumstances, you would not do it, you would answer—

"A. "No."

"Q. —one or both "no" because, no matter what the evidence is, you could not—

"A. No.

"Q. —ever answer both of them "yes" knowing ahead of time that that would mean the death penalty?

"A. That's correct.

"MR. VELA: Pass the juror.

"MR. LAMBRIGHT: We would re-urge our challenge.

"THE COURT: Challenge granted.

In *Williams v. State*, 622 S.W.2d 116 (Tex.Cr.App.1981), we held that a venireman was subject to challenge if his views about capital punishment would have prevented or substantially impaired performance of his duties in accordance with the trial court's instructions. The State may properly challenge a prospective juror if he

refuses to follow the statutory scheme. We find that in the case before us, there was sufficient testimony from the juror that he possessed conscientious scruples against infliction of the death penalty, and would be unwilling to follow the law and consider the evidence in responding to the special issues. See also *McKay v. State*, 707 S.W.2d 23 (Tex.Cr.App.1985); *Bird, supra,* at 65. Cf. *Roeder v. State*, 688 S.W.2d 856 (Tex.Cr.App.1984). Thus, the trial court did not err in granting the State's challenge for cause.

■ In his brief, appellant does not directly challenge the evidence supporting the State's challenge, but complains of the "mechanistic" approach used by the trial court. If this complaint is interpreted as a contention regarding the length of the voir dire, appellant failed to request that the trial court permit additional examination of the prospective juror. The record also shows that when the challenge was granted, appellant voiced no objection. Thus, appellant has not preserved any error regarding the trial court's approach to the voir dire. Appellant's second ground of error is overruled.

■ In grounds of error numbers one, three, four and five, appellant objects to the exclusion of several prospective jurors upon the State's challenge for cause. When the challenge was made, however, appellant voiced no objection whatsoever to the exclusion of the prospective jurors, and in one case, clearly consented to the exclusion. Thus, no error was preserved. *Holloway v. State*, 691 S.W.2d 608 (Tex.Cr.App.1984); *Duff-Smith v. State*, 685 S.W.2d 26 (Tex.Cr.App.1984); *Selvage v. State*, 680 S.W.2d 17 (Tex.Cr.App.1984); *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983); *Johnson v. State*, 629 S.W.2d 731 (Tex.Cr.App.1982); *White v. State*, 610 S.W.2d 504 (Tex.Cr.App.1981).

Conceding that error was not properly preserved, appellant requests that we consider these grounds in light of our holding in *Roeder v. State*, 688 S.W.2d 856 (Tex.Cr.App.1985). In that case, the defendant

voiced a general objection when the trial court excluded a qualified juror. We held that despite the generality of the objection, "It ... [was] clear from the record ... that counsel for both the State and the defense and the trial judge knew the nature of appellant's objection." *Id.* at 859. Thus, error was preserved and we sustained the defendant's ground of error.

In the case at bar, when the State challenged each of the four prospective jurors, appellant made no objection whatsoever. When the trial court granted the challenges, again appellant made no objection. It is impossible for a trial court to know the precise nature of an objection, if an objection is never made. Thus, as distinguished from the situation in *Roeder*, supra, appellant did not preserve error on the exclusion of the four prospective jurors. Accordingly, appellant's first, third, fourth and fifth grounds of review are overruled.

■ In three related grounds of error, appellant contends that Art. 37.071, V.A.C.C.P. is unconstitutional. In ground of error number eight, appellant contends that the trial court erred in overruling his challenge for cause to prospective venireman Simuel Nobles because Nobles' testimony reflected that he would require evidence in addition to that presented in the State's case in chief before he could answer the Art. 37.071 special issues affirmatively. In ground of error number eleven, appellant maintains that Art. 37.071, V.A.C.C.P. is unconstitutional as a violation of appellant's rights to due process and equal protection. In ground of error number twelve, appellant contends that the trial court erred in permitting the jury to consider evidence of unadjudicated offenses during the punishment phase of the trial because Art. 37.071, V.A.C.C.P. is unconstitutional as applied to appellant's case. We will consider these grounds together.

Initially, appellant contends that Art. 37.-071, V.A.C.C.P. violates his constitutional rights to due process since capital murder defendants are treated differently than oth-

er defendants vis-a-vis admission of unadjudicated offenses. In non-capital cases, introduction of a defendant's criminal record is permitted only where there has been an adjudication of guilt. Art. 37.07, § 3, V.A.C.C.P. In capital cases, the jury is allowed to consider evidence of unadjudicated offenses, which appellant contends is less reliable. Thus, appellant claims his rights to due process under the United States Constitution are violated.

We have consistently held that evidence of unadjudicated extraneous offenses is admissible at the penalty stage of a capital murder trial, and that such admission does not deprive an accused of due process and equal protection under the law. *Smith v. State*, 683 S.W.2d 393 (Tex.Cr.App.1984), and cases cited therein at 406. See also *Anderson v. State*, 701 S.W.2d 868 (Tex.Cr. App.1985). Moreover, since Art. 37.071, supra, is constitutional, the trial court did not err in permitting the jury to consider evidence of unadjudicated offenses during the punishment phase of trial. Grounds of error numbers eleven and twelve are overruled.

In his eighth ground of error, appellant complains of the trial court's failure to grant his challenge for cause to prospective juror Nobles. Nobles testimony indicated that he would not answer the special punishment issues in the affirmative in the absence of some evidence other than that presented in the State's case in chief. Appellant states in his brief:

> "Ordinarily such a position would not give a capital defendant concern. But counsel for Appellant was forced to make a challenge for cause because through pre-trial discovery, he was aware that the State planned to introduce during the punishment phase of the trial significant evidence of unadjudicated offenses. ... Because of the trial court's erroneous ruling regarding the Constitutionality of Article 37.071 ... [V.A.C.C.P.], the venireman would indeed receive much more evidence, evidence which properly should be excluded."

Since we have already found that Art. 37.071, supra, is constitutionally sound, the trial court did not err in overruling appellant's motions to exclude evidence of unadjudicated offenses. Moreover, the record indicates that prospective juror Nobles would require more proof than that of the offense in order to respond affirmatively to the special issues. Nobles' position did not render him subject to any defense challenge for cause; rather, the State may have been entitled to such a challenge under Art. 35.16(b)(3), V.A.C.C.P. Thus, the trial court did not err by overruling appellant's challenge for cause. Appellant's eighth ground of error is overruled.

In ground of error number thirteen, appellant claims that the trial court erred in determining that appellant's confession was given voluntarily since appellant's testimony indicating that he was placed in isolation until he agreed to give a statement was uncontroverted by direct testimony. Appellant gives no authority for his contention.

The trial court filed written findings of fact regarding appellant's statement, which indicate that the instant offense occurred on or about January 1, 1981. A complaint was filed in this cause on March 29, 1983. On April 6, 1983, Sergeants K. R. Williamson and L. B. Smith, of the Houston Police Department homicide division, visited appellant at the Diagnostic Unit of the Texas Department of Corrections, where appellant was serving a five year sentence for revocation of his probation in a burglary case. The sergeants advised appellant of the pending capital murder charges. Appellant admitted that he was acquainted with two of the co-defendants in the same case, but denied any knowledge of the offense. Williamson and Smith terminated the conversation. The trial court's findings contain the following statements:

> "7. At the time of the officers' conversation with the defendant on April 6, 1983, he had been residing in a tent on the Diagnostic Unit grounds occupied by first offenders classified as minimal security risks. Prison officials ascertained

that the defendant had additional felony charges pending, including a complaint alleging the offense of capital murder, and based upon that information, reassigned the defendant on April 6, 1983, to Row 13 in a diagnostic unit building, which constitutes a higher security area separate and distinct from the administrative segregation or "isolation" areas of the unit.

8. The Court finds from the testimony of Elmer W. Burgess, a building major responsible for Diagnostic unit security, that the defendant's reassignment within the Diagnostic Unit was solely on account of a determination by Texas Department of Corrections officials that he required a cell assignment in a higher security area, because of the nature of his pending charges. The Court further finds that the defendant was not subjected to any mistreatment, compulsion or coercion while residing at the Diagnostic Unit, and that no effort was made by Texas Department of Corrrections [sic] officials to coerce, compel or induce the defendant to cooperate with officers investigating the instant case."

The findings also indicate that appellant gave his statement two days after being moved into the higher security area cell.

 The determination of whether a confession is voluntary must be based upon the totality of circumstances surrounding its acquisition. *Barton v. State*, 605 S.W.2d 605 (Tex.Cr.App.1980), and cases cited therein at 607. Also, since the trial court is the sole trier of the facts and the exclusive judge of the credibility of the witnesses and the weight to be given their testimony, our review of the trial court's determination is limited to whether an abuse of discretion occurred. *Fierro v. State*, 706 S.W.2d 310 (Tex.Cr.App.1986); *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr. App.1983); *Green v. State*, 615 S.W.2d 700 (Tex.Cr.App.1981); *Barton*, supra; *Burks v. State*, 583 S.W.2d 389 (Tex.Cr.App.1979); *Sinegal v. State*, 582 S.W.2d 135 (Tex.Cr. App.1979).

The record supports the trial court's finding that appellant was not subjected to compulsion or coercion. Merely placing appellant in a jail cell, of itself, does not support a finding that the confession was not voluntarily made. The trial court did not abuse its discretion in determining that the confession was given voluntarily. Appellant's thirteenth ground of error is overruled.

The judgment of the trial court is affirmed.

CLINTON and TEAGUE, JJ., dissent.