Opinion issued January 16, 2003












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00166-CR




KENNETH RAY WILLIAMS, JR., Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 851614




MEMORANDUM OPINION

           A jury found appellant, Kenneth Ray Williams, Jr., guilty of aggravated assault
of a public servant and assessed punishment at 40 years’ confinement. In three points
of error, appellant argues that the trial court erred in denying two of appellant’s
challenges for cause, the evidence was legally and factually insufficient to support his
conviction, and the trial court erred in failing to grant his motion for a mistrial.
          We affirm.
Facts
          On July 31, 2000, Houston Police Officers Sutton and Randall set up a
surveillance of a high-crime area from an unmarked Jeep. Sutton and Randall
randomly selected license plate numbers from cars and checked them over the radio
with other officers who would then check the license plate numbers using a computer. 
When Sutton and Randall checked the license plate number of a Geo Prism that drove
by them, it was reported as a stolen vehicle. Sutton and Randall described the Geo
and its direction of travel over the police radio and told the other officers that the Geo
was occupied by two people.
          Houston Police Officer Aldape was notified over the radio of the stolen Geo. 
Aldape spotted the Geo, and he and Houston Police Officer Meraia got behind the
Geo to stop it. Aldape and Merai activated their lights and sirens and sounded their
horns, but the Geo did not stop. The Geo eventually pulled into the Willow Wood
Apartments and slowed down. At that time, while Aldape was behind the Geo, the
passenger door opened and appellant, sitting in the passenger seat, leaned out of the
car with a pistol in his hand and “started shooting.” Aldape testified that appellant
fired two to three shots at him. Aldape returned fire with his revolver, firing a single
round.
          Houston Police Officers Crew and Benavides were driving behind Aldape and
Meraia when the Geo drove into the Willow Wood Apartment complex. Crew
testified that he heard shots fired, and that he saw appellant pulling the gun back
inside of the car. Benavides testified that he saw the appellant “hanging out of the
vehicle” and firing a gun towards Officer Aldape.
          After the initial shooting, the driver of the Geo began driving through the
apartment complex with Aldape in pursuit. During the chase, appellant again started
firing at Aldape. The Geo eventually pulled out of the apartment complex and made
a u-turn onto a public street. When the Geo came alongside Aldape’s patrol car,
Aldape saw appellant gripping a pistol with two hands and taking aim at him. Aldape
responded by firing another round at the Geo with his revolver. 
          Officer Sutton testified that when he arrived at the apartment complex he saw
appellant in the passenger seat “literally tracking that patrol car trying to get a good
shot.” 
          The Geo then pulled into a second apartment complex, and with the Geo still
moving, the driver and appellant ran from the car. The Geo ultimately came to a stop
after striking a parked car occupied by three children. Shortly thereafter, appellant
was found and arrested on the second floor of one of the apartment buildings. 
          Houston Police Officer Myskowski found two pistols next to a chain link fence
alongside the apartment complex. He testified that they were probably recently
disposed of because there had recently been a lot of rain, and the two pistols were not
rusted, appeared to be clean, and were resting on top of dead leaves and foliage on
the ground. Houston Police Officer Lambright, a crime scene investigator, identified
the guns as a Dan & Wesson .357 magnum, and a Smith & Wesson .357 magnum. 
The Smith & Wesson had six empty shell casings in the cylinder, and the Dan &
Wesson had five empty shell casings and a single bullet still under the firing pin
where the primer got stuck. Lambright testified that at least 11 shots had been fired
by appellant.
          Jorge, the driver of the Geo, testified for the State that, although he had been
the driver, appellant had done all of the shooting. 
Denial of Appellant’s Challenges for Cause
          In point of error one, appellant argues that the trial court erred in denying
his challenges for cause of two of the venire members.
          A venire member who has a bias in favor of or against the defendant may be
challenged for cause. Tex. Code Crim. Proc. Ann. art. 35.16 (Vernon Supp. 2003). 
A challenge for cause may also be made where the venire member has a bias or
prejudice against any of the laws applicable to the case upon which the defense is
entitled to rely. Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (Vernon Supp. 2003).
          The denial of appellant’s challenges for cause will be reviewed for an abuse of
discretion. Robison v. State, 888 S.W.2d 473, 477 (Tex. Crim. App. 1994). We will
give deference to the trial court’s ruling to deny a challenge for cause because the
trial court is in the best position to see and hear the venire members. Id. (citing
McCoy v. State, 713 S.W.2d 940, 945 (Tex. Crim. App. 1986)). It is particularly
important to give deference to the ruling of the trial court where the venire member
vacillated, made an unclear statement, or was contradictory. Rachal v. State, 917
S.W.2d 799, 810 (Tex. Crim. App. 1996).
          Appellant challenged venire member 17 for cause because venire member 17
had responded affirmatively when appellant asked if any of the venire members, or
their family, had been assaulted with a weapon. Later, the following exchange
occurred between the trial court and the venire member: 
Court: This had to do with the question about the weapon
involvement. And frankly, I didn’t write down
exactly what you said.
 
Veniremember: My mother was assaulted.
 
Court: Your mother was assaulted?
 
Veniremember: Yes, by a couple of guys. One had a knife. 
 
Court: Okay. And I guess the nature of the question had to
do with simply because of the nature of the offense,
I guess, would you put a lesser standard on the State
than proving the defendant’s guilt beyond a
reasonable doubt?
 
Veniremember:No, no.
 
Court:You wouldn’t automatically vote guilty because
your mother was involved?
 
Veniremember:Absolutely not, no, sir.
 
Court:Would you listen to the evidence and base your
decision in this case based on what you heard in this
case and not on anything extraneous that happened
to your mother or anybody else?
 
Veniremember:Absolutely, I would.
 
Court:Just have a seat.

          Appellant also challenged venire member 38 for her opinion that the indictment
indicated that appellant had done something and because of her opinion regarding
appellant’s failure to testify. Appellant had asked if she believed that appellant must
have done something if he was indicted. Venire member 38 replied by stating, “well,
I have students all day long that may or may not have done exactly what the person
said, but they had to do something to make the person even say something in the first
place.” Later, the following exchange occurred between the trial court and venire
member 38: 
Court:This had to do with the question about the
indictment?
 
Veniremember:Right.
 
Court:The indictment is—we’ve already told you that. 
Were you saying that because there is an indictment,
you’re presuming him guilty or—
 
Veniremember:He was just saying like if, you know, that someone
has already previously been said guilty—
 
Court:Said what?
 
Veniremember:Previously said they were guilty, like he was asking
about my children at school. If I have a student at
school and one child said that someone did
something and I am already assuming that that child
did something, it doesn’t mean they did exactly what
this person is saying, but they did something to
make that person warrant—
 
Court:But you don’t know what it was.
 
Veniremember:Exactly.
 
Court:That’s kind of why we are here.
 
Veniremember:Right.
 
Court:—With the indictment. [sic] We know they have
found there is some reason to believe we should be
here.
 
Veniremember:That’s what I was thinking [sic] saying.
 
Court:But you’re not saying it is any evidence of guilt?
 
Veniremember:No.
 
Court:Just have a seat.
 
Mr. Moncriffe:Judge, she had another issue on failure to testify. If
he didn’t testify, she would hold that against him.
 
Veniremember:I don’t think I said that.
 
Court:You understand if the defendant doesn’t testify on
his own behalf, I would give you the instruction
you’re not to consider it as any evidence
whatsoever? Could you follow that instruction?
 
Veniremember:Uh-huh.
 
Court:Just have a seat.

          Appellant has failed to show that venire members 17 and 38 had a bias or
prejudice towards appellant or the law applicable to the case, or that they were unfit
to serve on the jury for any other reason. Venire member 17 said that he could base
his decision on the evidence and would not consider anything that had happened to
his mother when he was deciding the case. Venire member 38, while initially
indicating that appellant would have had to have done something in the first place to
be in the position he was in, later clarified to the judge that she would not use
appellant’s indictment as evidence of his guilt. Venire member 38 also stated that if
appellant failed to testify, she would not consider that as evidence against him. Both
of these jurors were clear in their statements that they would follow the instructions
given by the trial court. Accordingly, we hold that the trial court did not err in
denying appellant’s challenges for cause.
          We overrule point of error one.
Legal and Factual Insufficiency
          In his second point of error, appellant argues that the evidence was legally and
factually insufficient to support his conviction because the evidence failed to show
that appellant intentionally and knowingly threatened Aldape with imminent bodily
injury. 
          When reviewing the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
          A person commits assault when he intentionally or knowingly threatens another
with imminent bodily injury. Tex. Pen. Code Ann. § 22.01(a)(2) (Vernon Supp.
2003). A person commits aggravated assault if the person commits an assault, and
uses or exhibits a deadly weapon during the commission of the assault. Tex. Pen.
Code Ann. § 22.02(a)(2) (Vernon 1994). An offense under section 22.02 is a first
degree felony if the offense is committed against a person the defendant knows is a
public servant while the public servant is lawfully discharging an official duty. Tex.
Pen. Code Ann. § 22.02(b)(2) (Vernon 1994).
          A defendant’s intent may be inferred from his words, acts, and conduct at the
time of the offense. Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982). A
person acts intentionally, or with intent, with respect to the result of his conduct when
it is his conscious objective or desire to cause the result. Tex. Pen. Code Ann. §
6.03(a) (Vernon 1994). A person acts knowingly, or with knowledge, with respect
to the result of his conduct when he is aware of the result of his conduct. Tex. Pen.
Code Ann. § 6.03(b) (Vernon 1994).
          Appellant contends that the evidence only supports the fact that he fired a
weapon in the direction of a police officer, but that it does not prove that he
intentionally or knowingly threatened the officer. We disagree. Officer Aldape
testified that appellant initially fired two to three rounds at him, and was “definitely”
aiming at him. Officer Benavides testified that he saw the appellant “hanging out of
the vehicle” and firing a gun towards Officer Aldape. Aldape testified that appellant
continued to fire at him during the pursuit, and, at one point, was aiming the pistol at
him with two hands as their cars were alongside one another. Officer Sutton testified
that appellant was “literally tracking that patrol car trying to get a good shot.” The
evidence showed that appellant fired approximately 11 rounds during the pursuit, and
Aldape’s patrol car was struck twice by bullets from appellant. 
          Viewing the evidence in the light most favorable to the verdict, we conclude
that a rational jury could have found beyond a reasonable doubt that appellant
intentionally and knowingly threatened Officer Aldape with bodily injury by shooting
at him with a pistol. Accordingly, we hold the evidence legally sufficient to support
the verdict.
          In a factual-sufficiency determination, we must decide “whether a neutral
review of all evidence, both for and against the finding, demonstrates that the proof
of guilt is so obviously weak as to undermine confidence in the jury’s determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.” King, 29 S.W.3d at 563. We will reverse only if a manifest injustice
has occurred. Id. 
          Appellant contends that because only the lower half of the patrol car was struck
by bullets, and because appellant testified at the punishment phase of the trial that he
was only aiming at the tires, the evidence is factually insufficient to support his
conviction. But in making our factual-sufficiency determination, we will not consider
evidence introduced at the punishment phase of trial. See Barfield v. State, 63
S.W.3d 446, 450 (Tex. Crim. App. 2001). Accordingly, we will not consider
appellant’s testimony during the punishment phase of the trial that he was only trying
to shoot the tires on Aldape’s patrol car. 
          We hold that the evidence of two bullet strikes to the lower half of Aldape’s
patrol car does not amount to proof that greatly outweighs the State’s evidence that
appellant intentionally or knowingly threatened Officer Aldape with bodily injury. 
Accordingly, we hold that the evidence was factually sufficient to support appellant’s
conviction.
          We overrule point of error two.
Motion for Mistrial
          In his third point of error, appellant argues that the trial court erred in failing
to grant appellant a mistrial because the State had continually argued outside of the
four accepted areas of jury argument.
          Mistrial is a remedy used only for highly prejudicial and incurable errors. 
Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). We will presume that
the jury obeyed any instructions to disregard, and that any error was cured by the
instruction. Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). An
instruction to disregard is usually adequate unless the testimony given was “clearly
calculated to inflame the minds of the jury, or was of such damning character as to
suggest it would be impossible to remove the harmful impression from the jury’s
mind.” Kipp v. State, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994) (citing Kemp
v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992)). We review the decision of
the trial court to deny a request for a mistrial under an abuse-of-discretion standard. 
Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).
          The four generally approved areas for jury argument are (1) summation of the
evidence, (2) reasonable deductions from the evidence, (3) answer to argument of
opposing counsel, and (4) plea for law enforcement. Westbrook v. State, 29 S.W.3d
103, 115 (Tex. Crim. App. 2000). 
          Appellant contends that the first improper comment by the prosecutor
concerned the range of punishment. The prosecutor had stated that, “basically, as you
can tell, lesser means lesser offense, lesser range of punishment.” The trial court
sustained appellant’s objection to the statement and gave the jury an instruction to
disregard the statement, but did not grant appellant’s motion for mistrial. The
prosecutor then stated, “The way it works is only if you find this defendant not guilty
of aggravated assault . . . do you even consider the lesser of deadly conduct. So I
believe you are not even going to get there . . . .” Appellant objected on the basis that
the prosecutor was giving a personal belief, and the objection was sustained and an
instruction to disregard was given to the jury. The trial court did not grant appellant’s
motion for mistrial.
          Appellant also objected to the State’s rebuttal argument, when the State said,
“we don’t know what would have happened if he had a third gun or a semiautomatic
that carried more bullets.” Appellant’s objection to this statement was overruled. 
Lastly, appellant objected when the prosecutor, after stating that the police are often
criticized, and have a thankless job, stated, “Would you, for the little money that they
make, ever put yourself—” The trial court sustained the objection and gave an
instruction to disregard the statement, but did not grant appellant’s motion for
mistrial.
          Punishment may not be appropriately discussed by either side until and unless
the defendant is convicted; then it may be discussed at the punishment phase. Garcia
v. State, 887 S.W.2d 862, 877 (Tex. Crim. App. 1994), overruled on other grounds
by Hammock v. State, 46 S.W.3d 888, 893 (2001). Here, the State improperly
informed the jury that a lesser offense carries a lesser punishment. We will presume
that the harm, if any, was cured by the trial court’s instruction to disregard. Gardner,
730 S.W.2d at 696. Here, where the State did not inform the jury what the range of
punishment was for the charged offense or the lesser-included offense, and where the
judge immediately gave the jury an instruction to disregard, we cannot conclude that
the statement was of such “damning character” that it would have made it impossible
to remove the harmful impression from the minds of the jurors. Kipp, 876 S.W.2d at
339. 
          The prosecutor’s statement that he believed that the jury was “not even going
to get there,” in reference to the jury’s consideration of a lesser offense, was not an
impermissible one. The State is not permitted to give an unqualified personal opinion
as to the guilt of the defendant. See Villalobos v. State, 568 S.W.2d 134, 134 (Tex.
Crim. App. 1978) (holding that it was error for the prosecutor to argue that, “I don’t
think that self-defense is adequate for this case,” and “I believe that he is just as guilty
as he can possibly be.”). But the State may give a qualified statement in his belief
that is predicated upon the evidence adduced at trial. Davis v. State, 642 S.W.2d 510,
512 (Tex. Crim. App. 1982) (holding that it was not error for the prosecution to state
that, “I think there’s evidence beyond any reasonable doubt that the defendant did
participate in the offense, that he’s the second person who raped [complaining
witness]”). We believe that the statement of the State in this case was more like the
one given in Davis. The statement here was not an unqualified opinion of the
prosecutor as to the guilt of appellant; rather, it was more like a statement of the
State’s belief as to the conclusion that the jury would come to after reviewing the
evidence. A prosecutor who manifests his belief as to what action the jury will take
after reviewing the evidence is not analogous to a situation where a prosecutor
unqualifiedly tells the jury that he believes the defendant to be guilty. Accordingly,
we hold that the State’s comment was not an improper jury argument. 
          Likewise, the State’s comment that, “we just don’t know what would have
happened if he had a third gun” was not improper. Speculation is not improper if it
is based upon reasonable deductions from the evidence. See Hudson v. State, 675
S.W.2d 507, 511 (Tex. Crim. App. 1984) (holding that it was proper for the State to
ask the jury to speculate on what the defendant would have done if the police had not
arrived); Gonzales v. State, 831 S.W.2d 491, 494 (Tex. App.—Houston [14th Dist.]
1992, pet. ref’d) (holding that it was proper for the prosecutor to ask the jury to
speculate on what would have happened if the defendant had been two steps closer
to the victim when he slashed at him with a knife). Here, where the evidence showed
that appellant had run out of bullets in one gun, and had tried to fire all of the bullets
in the other gun, it was not improper for the State to ask the jury to speculate on what
could have happened if appellant had had another gun or a different kind of gun that
carried more bullets, because such speculation was a reasonable deduction from the
evidence.
          The State’s comments to the jury that the police are often criticized and
overworked, and the State’s question to the jury as to whether they would ever put
themselves in the position that police officers are in, were also proper jury argument
as a plea for law enforcement. Generally, “golden rule” arguments, or those
arguments that ask the jury to place themselves in the position of the victim, are not
permissible. See Boyington v. State, 738 S.W.2d 704, 709 (Tex. App.—Houston [1st
Dist.] 1985, no pet.) (“[T]he repeated urging for the jury to place themselves in the
shoes of the victim . . . could only be designed to inflame the passions of the jury . .
. and is manifestly improper . . . .”). But here, the State did not ask the jury to put
themselves in the shoes of a victim; rather, the State was seeking the sympathy of the
jurors for law enforcement officers generally. A plea for law enforcement is proper
jury argument. Westbrook, 29 S.W.3d at 115. Appellant does not explain how the
State’s argument was not a plea for law enforcement. Accordingly, we hold that the
comment by the State was permissible jury argument. Alternatively, even if the
comment was not proper, we will presume that the trial court’s instruction to
disregard cured any harm that was caused by the statement.
          We overrule point of error three.
Conclusion
          We affirm the trial court’s judgment. 
          
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Jennings.

Do not publish.