**David Allen ROEDER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68887.**

Court of Criminal Appeals of Texas, En Banc.

April 3, 1985.

Rehearings Denied May 15, 1985.

---

Donald W. Rogers, Jr. (court appointed on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Jack Frels and Ted Wilson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

This is an appeal from a conviction for capital murder. After the jury answered the special issues in the affirmative, the trial judge sentenced appellant to death.

In his first ground of error, appellant argues that prospective juror Tammy Lynn Wilson was erroneously excused in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).

The State confesses error in their appellate brief but argues that appellant did not preserve the error because defense counsel only voiced a general objection at the time that Wilson was excused:

"Unfortunately, the State is constrained to acknowledge that the pro-

spective juror in this ground of error was excluded under an impermissibly broad concept of 'affect', having indicated a resolve to answer the punishment issues according to the evidence even if the result would be capital punishment and only indicating that she would take a harder look at the evidence because it was a capital case. *See, Pierson v. State, 614 S.W.2d 102, 107 (Tex.Crim. App.1980).*" (State's brief, page 2.)

Our review of the record shows that Wilson was erroneously excused. Throughout the voir dire, Wilson stated that, although knowing the mandatory penalty of death would affect her deliberations, she could answer the special issues affirmatively if the State proved their case beyond a reasonable doubt. The trial court sustained the State's challenge for cause after the following exchange between the prosecutor and Wilson:

"Q. And when we are talking about looking at the evidence and answering the questions, because of the way you feel about it, you would have to look at the evidence harder or something. It would affect the way you looked at the evidence, would it not?

"A. Yes.

. . . . .

"MR. SHAVER: I would re-urge my challenge.

"THE COURT: All right, the challenge will be sustained. Thank you very much for your very fair and candid answers to the lawyers here—yes, sir?

"MR. HOUSE: We object to the Court's sustaining the challenge."

As the State freely admits, the case at bar is very similar to *Pierson v. State,* supra. In *Pierson v. State,* supra, we held that the mere fact that a prospective juror testified that he would "take a much harder look at the evidence, and look for more reasonable doubt" than he would otherwise is not sufficient reason to excuse a juror. This Court recognized that under *Adams v. Texas,* supra, no prospective juror should be excluded simply because he or she stat-

ed that his or her view of the facts or law would be "affected" by the possible infliction of the death penalty.

"Based on our own examination of the record, we have concluded that § 12.31(b) was applied in this case to exclude prospective jurors on grounds impermissible under Witherspoon and related cases. As employed here, the touchstone of the inquiry under § 12.31(b) was not whether putative jurors could and would follow their instructions and answer the posited questions in the affirmative if they honestly believed the evidence warranted it beyond reasonable doubt. Rather, the touchstone was whether the fact that the imposition of the death penalty would follow automatically from affirmative answers to the questions would have any effect at all on the jurors' performance of their duties. Such a test could, and did, exclude jurors who stated that they would be 'affected' by the possibility of the death penalty, but who apparently meant only that the potentially lethal consequences of their decision would invest their deliberations with greater seriousness and gravity or would involve them emotionally. Others were excluded only because they were unable positively to state whether or not their deliberations would in any way be 'affected.' But neither nervousness, emotional involvement, nor inability to deny or confirm any effect whatsoever is equivalent to an unwillingness or an inability on the part of the jurors to follow the court's instructions and obey their oaths, regardless of their feelings about the death penalty. The grounds for excluding these jurors were consequently insufficient under the Sixth and Fourteenth Amendments. Nor in our view would the Constitution permit the exclusion of jurors from the penalty phase of a Texas murder trial if they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond reasonable doubt, but not otherwise, yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt. Such assessments and judgments by jurors are inherent in the jury system, and to exclude all jurors who would be in the slightest way affected by the prospect of the death penalty or by their views about such a penalty would be to deprive the defendant of the impartial jury to which he or she is entitled under the law." *Adams v. Texas*, supra, 448 U.S. at 49, 100 S.Ct. at 2528. [footnotes omitted]

Clearly prospective juror Tammy Lynn Wilson was erroneously excused. See also: *Hartfield v. State*, 645 S.W.2d 436 (1983); *Cuevas v. State*, 641 S.W.2d 558 (Tex.Cr. App.1982).

■ We now turn to the State's argument that appellant's general objection was not sufficient to preserve error. The State asks that we reexamine this Court's holding in *Hartfield v. State*, 645 S.W.2d 436 (Tex.Cr.App.1983).

In *Hartfield v. State*, supra, the prospective juror was excused in violation of *Adams v. Texas*, supra. In its motion for rehearing, the State argued that since the defense only told the court they excepted to the exclusion of the prospective juror without specifying the grounds for that exception error was not preserved. In response to this argument the Court wrote:

"... We do not agree. It must be kept in mind that the voir dire examination in question took place in June of 1977, three full years prior to the June 1980 decision in *Adams*, supra. Therefore, at the time Hlozek was excused, Sec. 12.31(b) was considered constitutional even to the extent that it allowed exclusion of prospective jurors on a broader ground than *Witherspoon*, supra, and consequently there was no reason for appellant's counsel to strenuously attempt to preserve his error. We find that appellant did not waive his error." *Hartfield v. State*, 645 S.W.2d at 441.

We decline to reexamine our holding in *Hartfield* for two reasons. First, we believe the reasoning therein to be sound and

definitely applicable to the instant case in which voir dire of the jury panel began on August 14, 1978, clearly prior to the United States Supreme Court's decision in *Adams v. Texas*, supra. Secondly, the primary purpose of the specific objection rule is to ensure that the trial court and opposing counsel are informed of the ground of objection so that first, the trial judge can rule on the objection, and second, opposing counsel may be afforded an opportunity to remove the objection or in some way cure the alleged error. *Zillender v. State*, 557 S.W.2d 515 (Tex.Cr.App.1977).

"In accordance with these policies, a number of exceptions to the general rule that a party cannot complain on appeal to the overruling of a general objection or an imprecise specific objection have been created. 1 McCormick and Ray, Evidence, Sec. 25, p. 25 (2d ed.1956). Thus, where the correct ground of exclusion was obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection. McCormick & Ray, supra." *Zillender v. State*, supra, at 517.

It is clear from the record in the instant case that counsel for both the State and the defense and the trial judge knew the nature of appellant's objection. After the State challenged Ms. Wilson for cause, defense counsel took her on voir dire in an attempt to rehabilitate her. At the conclusion of defense counsel's questioning, the following exchange occurred:

"THE COURT: Do you have other questions, then, Mr. Shaver?

"MR. SHAVER: No, Judge, it is my position that my challenge is still good, based upon her answers that it would affect her deliberations or issues of fact. I will be happy to show the Court some citations.

"THE COURT: All right, do you have other questions, then Mr. House on the matter of whether or not it would affect her deliberations?

"MR. HOUSE: I have one question."

Thereupon, both defense counsel and the prosecutor interposed several more questions to Ms. Wilson as to what she meant when she used the phrase "affecting her deliberations." At the conclusion of this round of questioning, the State's challenge for cause was sustained, followed by appellant's general objection. Clearly, everyone present was aware why Ms. Wilson was being challenged for cause and why appellant was objecting to the sustaining of that challenge. See also, *Turner v. State*, 635 S.W.2d 734 (Tex.Cr.App.1982) (where defendant's general objection was sufficient to preserve error.) To hold now that appellant did not preserve error would be unfair to the appellant, especially in light of the permanent nature of appellant's assessed punishment. We hold that error was preserved and sustain appellant's ground of error.

■ Among his other grounds of error, appellant alleges that his written confession and oral confession and the evidence recovered as a result thereof were illegally obtained. We do not consider these grounds of error since we have already found reversible error. In connection therewith, however, we must address appellant's twelfth ground of error in which he argues that eliminating this illegally obtained evidence the other evidence is insufficient to support his conviction. Appellant does not maintain that all the evidence, proper and improper, is insufficient to support the conviction. See *Porier v. State*, 662 S.W.2d 602, 606 (Tex.Cr.App.1984). Instead, like the appellant in *Collins v. State*, 602 S.W.2d 537 (Tex.Cr.App.1980):

"... appellant ... tries to bootstrap himself into an acquittal by arguing first that a piece of evidence was admitted erroneously, and then that the erroneously admitted evidence must be discounted in considering the sufficiency of the evidence." 602 S.W.2d at 539 (Concurring opinion).

As a result, we must refuse to consider the sufficiency of the evidence under such circumstances and reverse and remand. *Porier v. State*, supra. See also, *Adams v. State*, 639 S.W.2d 942 (Tex.Cr.App.1982),

and *Fearance v. State*, 620 S.W.2d 577 (Tex.Cr.App.1980).

The judgment is reversed and the cause remanded.