James McQUEEN aka James Prince, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–84–0768–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 16, 1986.

Thomas D. White, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Don Clemmer, Glen Gotschall, Harris Co. Asst. Dist. Atty., Houston, for appellee.

Before DUGGAN, JACK SMITH and HOYT, JJ.

## OPINION

DUGGAN, Justice.

Appellant was indicted for murder but found guilty by a jury of the lesser included offense of aggravated assault. The court found the enhancement allegation of the indictment to be true, and assessed punishment at 15 years confinement. Appellant asserts 14 grounds of error.

On Saturday, June 4, 1983, during an argument over a debt owed him by the deceased, appellant struck the deceased about the head and face with a stick. Two days later, the deceased died. An autopsy showed his death was the result of a brain injury.

▮ Appellant's first ground of error asserts that the evidence is insufficient to support a finding that he inflicted serious bodily injury upon the deceased. State's eyewitnesses to the altercation testified that appellant struck the deceased on or about the head with a stick or club two to five times, leaving a visible ¾ inch laceration on his eyebrow. State's evidence further showed that as a result of appellant's blows, the deceased bled from his temple and was helped home, where he lay down; that he appeared to be dizzy and complained of a headache; that he slept all Saturday night and got up only briefly Sunday morning to go to the bathroom;

that he returned to bed and apparently never awoke again; that when his sister could not awaken him between 4:30 p.m. and 5 p.m. on Sunday, she called an ambulance; and that he was taken to Ben Taub Hospital, where he died at 5:30 p.m. on Monday, June 6.

Dr. Aurelio Espinola, the Harris County Deputy Medical Examiner, testified that the brain injury that caused death was consistent with the deceased being struck with a club. However, the medical examiner also testified that the autopsy showed that the injury was inflicted from 8 to 24 hours prior to death, and that in all medical probability, the injury would have rendered the deceased unconscious. Appellant argues that because the undisputed evidence showed (1) that the blow or blows he inflicted on the deceased did not render him unconscious, (2) that the deceased walked home and got up the next morning to go to the bathroom, and (3) that appellant's blows to the deceased occurred at least 38 hours before death, the evidence is insufficient to show that any blow appellant struck caused the serious bodily injury to the deceased that is required for conviction for aggravated assault. "Serious bodily injury" is defined as

bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

Tex.Penal Code Ann. sec. 1.07(a)(34) (Vernon 1974).

The jury was at liberty to accept Dr. Espinola's testimony that the cause of death was consistent with a blow from a club, and to reject his testimony as to the time of occurrence of the injury and that it would render the deceased unconscious. It was within the jury's province to conclude that the appellant inflicted the "serious bodily injury" that caused the deceased's death. When viewed in the light most favorable to the verdict, the evidence is sufficient to prove that appellant caused the deceased's serious bodily injury, as alleged in the indictment, by striking him on the

head with a club. *See Combs v. State*, 643 S.W.2d 709 (Tex.Crim.App.1982); *Williams v. State*, 605 S.W.2d 596, 598 (Tex.Crim. App.1980); Tex.Penal Code Ann. sec. 22.02 (Vernon Supp.1986). Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the jury could not find him guilty of aggravated assault after finding him not guilty of both murder and voluntary manslaughter.

Appellant was tried for the offense of murder under Texas Penal Code Ann. sec. 19.02(a)(2) (Vernon 1974), which states that a person commits an offense if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Aggravated assault is a lesser included offense of murder under sec. 19.02(a)(2). *Coit v. State*, 629 S.W.2d 263, 265 (Tex.App.—Dallas 1982, pet. ref'd). Section 22.02(a)(1) provides that a person commits aggravated assault when he commits an assault and "causes serious bodily injury to another." Murder under sec. 19.02(a)(2) and aggravated assault differ in that the latter does not require proof that the act committed that caused the death of the deceased was "clearly dangerous to human life." *Coit*, 629 S.W.2d at 265.

A finding of aggravated assault is therefore warranted if the evidence shows that the defendant committed an assaultive act and caused serious bodily injury (death being within the definition of "serious bodily injury"), but raises a reasonable doubt that he committed an act "clearly dangerous to human life" that caused the death. The jury apparently did not believe, or entertained a reasonable doubt, that appellant's act in striking the deceased was clearly dangerous to human life. Conviction for the lesser offense of aggravated assault was therefore proper. Appellant's second ground of error is overruled.

Appellant's third ground of error urges that the court permitted the State, over defense objection, to bolster four of its witnesses during jury argument. The State replies that its argument was a proper answer to argument by appellant's attorney.

Bolstering occurs when a party improperly uses an item of evidence to add credence or weight to some unimpeached piece of evidence he has earlier offered. *Pless v. State*, 576 S.W.2d 83, 84 (Tex.Crim. App.1978). A prosecutor cannot vouch for the credibility of a witness during argument, except in reply to defense counsel's argument. *Carter v. State*, 650 S.W.2d 843, 847 (Tex.App.—Houston [14th Dist.] 1982), *aff'd*, 650 S.W.2d 793 (Tex.Crim.App. 1983).

Appellant complains of the following argument by the prosecutor:

Mr. Gotschall: Well, basically, *if defense counsel wants to ask the witnesses about their records* or their reputations for being truthful, that is, Cheryl Duncan, J.D. McCalister, Fred Clark, Augusta Collins, *he would have asked.* And you would have found out if there was some reason in their past why you shouldn't believe them. (Emphasis added).

Appellant's attorney had repeatedly attacked these witnesses' credibility during his earlier argument, characterizing them as thieves, unemployed associates of a drug dealer, and members of an enemy group. The quoted argument does not fall within the meaning of bolstering because neither appellant nor the State had previously offered evidence of criminal records or reputations of these witnesses. Once appellant's attorney characterized the State's witnesses as criminals, the State could answer the argument. The prosecutor's response merely pointed out that the defense could have impeached the State's witnesses on the basis of their prior criminal records, which the defense surely would have done if such records in fact had existed. This was an acceptable response. Appellant's third ground of error is overruled.

Appellant's fourth ground of error asserts that the prosecutor was allowed to imply in his closing argument at the

guilt/innocence stage that he could only go back 10 years to show that appellant had been convicted within that time, and that he was unable to show whether appellant had been arrested, charged, or suspected of crimes for which he was not convicted. He urges that such argument was tantamount to telling the jury that appellant had been convicted of crimes prior to the 10 years preceding trial, and that appellant had been arrested, charged, and suspected of crimes for which he had not been convicted.

The argument in question was the following:

MR. GOTSCHALL [the prosecutor]: James McQueen said that this happened and if it didn't happen, then, anyway, that is not what caused his death. And, well, we can't dispute that he was there. He was there, but some guy went for a gun and he was trying to protect himself on this crusade to clean up the streets because he had a clean record. Well, you remember this question: "Have you ever been convicted—," not arrested, not charge [sic], not suspected, but convicted—

MR. WHITE: We object to this kind of argument, Your Honor.

THE COURT: What is yor [sic] objection?

MR. WHITE: We object to this line of argument.

THE COURT: Well, I haven't heard it all. Ladies and gentlemen of the jury, you will remember the testimony as you heard it. You may continue, Mr. Gotschall.

MR. GOTSCHALL: "Have you ever been convicted of a felony or a misdemeanor involving moral turpitude in this state or any other state or the United States in the past ten years?

MR. WHITE: We object to that line of argument, Your Honor. The prosecutor—I don't know what he is trying to do, but—

THE COURT: Overruled.

MR. WHITE: We ask for—May I perfect that later, Judge?

THE COURT: Yes, sir.

MR. GOTSCHALL: So the defense attorney's representation to you, ladies and gentlemen, actually is Mr. Clean's record. I submit to you that based upon what you have heard about his actions and about this police officer who came and told you that in the two years he has been in that district—and this is what the law enables the officer to tell you—he has a reputation for not being a truthteller. For lying. And this whole issue, this whole web of self-defense, hinders [sic] upon, what? What he told you. So to get to the point, there is no self-defense. There is no voluntary manslaughter. There is no aggravated assault. Because in order to believe that, you have to believe the defendant. You have every reason in the world to know now that he is not telling you the truth. Plain and simple. If there is any doubt about it, let's go back to that question. That is a direct question, you put it to somebody up front and say, "Have you ever been convicted, in effect, of a crime?" And they have the opportunity to admit it or deny it, within the past ten years.

MR. WHITE: Your Honor, this line of questioning is argument—is horrible.

THE COURT: Overruled, counsel.

The enhancement paragraph of the indictment, which was not read to the jury, did allege a felony conviction in 1964, some 19 years earlier.

▉ Appellant's attorney's objections were vague and conclusory. Nevertheless, the court should have been made aware by any objection at all that the State's argument could be interpreted to imply that appellant had been arrested, charged, or accused of crimes for which he was not convicted, and that he had been convicted of crimes more than 10 years past. Where the correct ground of exclusion is obvious, no waiver results from a general objection. *Roeder v. State*, 688 S.W.2d 856 (Tex.Crim. App.1985). All such inferences and suggestions of impermissible impeachment matters were improper, and constituted error. However, in similar cases of improper

argument, where no new and harmful fact has been injected, the error has been held not to be reversible. *Mims v. State*, 466 S.W.2d 317 (Tex.Crim.App.1971); *Green v. State*, 698 S.W.2d 776 (Tex.App.—Fort Worth 1985, no pet.). Appellant's fourth ground of error is overruled.

■ In his fifth, sixth, seventh, and eighth grounds of error, appellant complains of the reputation evidence from three witnesses admitted at the punishment hearing before the court. Three of these grounds center on omission of the word "general" from the prosecutor's questions to reputation witnesses about appellant's reputation for being peaceful and law abiding. The question asked each time was, "Do you know the reputation of James McQueen in the community in which he resides for being a peaceful and law abiding citizen?"

Appellant cites no authority requiring that the word "general" precede the word "reputation" in an inquiry about a defendant's reputation as to a particular quality or trait. The prosecutor's questions were sufficiently clear to elicit evidence of the limited category of reputation about which he was entitled to inquire, i.e., appellant's reputation as a peaceful and law-abiding person.

■ In his remaining ground of error concerning reputation testimony, appellant complains that the trial court allowed inadmissible hearsay from Officer Vizena. Vizena testified that he learned of appellant's bad reputation as a peaceful and law abiding person from a complaining witness in a shooting incident, who "immediately pointed out [appellant] as the person who shot him." The answer was an unresponsive narrative statement, improperly volunteered by a witness who was apparently anxious to inject derogatory information into the record about appellant. However, the hearing was before the court without a jury, and we find the error was harmless. The court is presumed to disregard improper evidence. *Keen v. State*, 626 S.W.2d 309 (Tex.Crim.App.1981).

Grounds of error five, six, seven, and eight are overruled.

■ Appellant's ninth ground of error alleges that the trial court erred in not allowing him to show that he was taking medication that made him sleepy, thereby giving the jury an unfavorable impression. No harm is shown because nothing in the record suggests that appellant's physical appearance showed him to be sleepy, or unresponsive, or inattentive. If he was sleepy, and if the jury observed it, there is nothing in the record to indicate that they considered it in reaching the verdict. Ground of error nine is overruled.

In his tenth ground of error, appellant complains of the admission of hearsay testimony of a conversation between the deceased and his sister about the deceased's head hurting. The testimony recounted a conversation occurring at a time after the altercation and before the deceased's death, when he was in a great deal of physical pain. The deceased's sister testified that he complained right after the altercation that the back of his head hurt; that about three hours later, she asked him if he wanted to see a doctor; and that he replied that the back of his head was hurting but he did not want to go to a doctor.

■ In deciding whether to admit such testimony as an exception to the hearsay rule, the determining factor is whether the circumstances reasonably justify the conclusion that the remarks were spontaneous and not made as a result of reflection. *Martinez v. State*, 533 S.W.2d 20, 22–23 (Tex.Crim.App.1976). To be admissible as an exception, three factors must be shown: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to contrive, misrepresent, or fabricate; and (3) the statement must be related to the circumstances of the occurrence. *Id.* at 23. The circumstances of the present case indicate that all three factors were present. Ground of error 10 is overruled.

In his ground of error 11, appellant complains that the court erred in instructing

the jury to disregard his testimony that "[the deceased] is known to carry his .25 automatic. He does a lot of robbing with that." In ground of error 12, he complains that he should have been allowed to testify to the statement, "Man, why don't somebody help him," made by another witness during a robbery that appellant saw the deceased commit.

The court properly excluded appellant's testimony concerning the deceased's propensity to commit robberies. The fact that the deceased was known to carry a gun was later properly admitted. The excluded res gestae robbery statement from another witness to it was also later admitted. Accordingly, no harm was shown by the initial exclusions. Grounds of error 11 and 12 are overruled.

In his final two grounds of error, appellant charges that the trial court, by its erroneous rulings excluding evidence and by its admonishment to him to avoid side bar remarks, made him appear in a bad light to the jury. However, he does not develop his argument or cite any authority; nothing is presented for review. *McWherter v. State*, 607 S.W.2d 531, 536 (Tex.Crim. App.1980). Grounds of error 13 and 14 are overruled.

The judgment is affirmed.

HOYT, J., dissenting.

HOYT, Justice, dissenting.

I respectfully dissent. The majority affirms the judgment in this case by, among other things, holding that the prosecutor's impermissible jury argument was harmless, because it did not inject new and harmful facts before the jury. The majority relies on *Mims v. State*, 466 S.W.2d 317 (Tex.Crim.App.1971), and *Green v. State*, 698 S.W.2d 776 (Tex.App.—Fort Worth 1985, no pet.), for the proposition that because no statute was violated and no new and harmful fact was presented to the jury, no harm was done. Essentially *Mims* stands for the proposition that where the appellant has entered a guilty plea and there are no doubts that the plea was vol-

untarily made, the case will not be reversed because of improper jury argument. This reading of *Mims* is understandable because the issue of guilt is resolved by the guilty plea.

But, there are cases that hold that the error is harmful when the State invites the jury to speculate about extraneous matters and a proper objection is made. *See Green v. State*, 679 S.W.2d 516, 518 (Tex.Crim. App.1984); *see also Clemons v. State*, 605 S.W.2d 567, 572 (Tex.Crim.App.1980); *Stearn v. State*, 487 S.W.2d 734 (Tex.Crim. App.1972).

The case before us is more analogous to *Robinson v. State*, 701 S.W.2d 895 (Tex. Crim.App.1985), where the following argument by the State was admitted over appellant's objections:

Now, Ladies and Gentlemen, I will just say this, you may think that the testimony was short from two witnesses that I put on the stand in the punishment stage but I submit to you that their testimony was very, very important for this reason, that those were the only questions I was allowed by law to ask that type of witness and (sic) this part of the trial—.

. . . . .

On the other hand, Mr. Corbitt [defense attorney] could ask these witnesses upon what do they base their statements if he wanted to but no, I submit to you it is a reasonable deduction from the failure to ask those witnesses any questions that the answers would have been adverse to his client—.

In *Robinson*, as here, the State had not presented any evidence of previous convictions. The jury here could have believed that there was some prior conviction for a similar offense and because of the "technicalities" they would not know about it.

When the appellant in the case before us was asked whether he had committed a felony or misdemeanor involving moral turpitude in the United States in the past 10 years, he answered "No." Without any evidence to the contrary, the State proceeded to imply and suggest in closing argu-

ment that the appellant had been convicted of a crime and that he had been untruthful in his answer. Jury argument is limited to summation of evidence, reasonable deductions from the evidence, answering opposing counsel's argument, and pleas for law enforcement. *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim.App.1973). The purpose of closing argument is to assist the jury in properly analyzing evidence presented at trial so that it may reach a just and reasonable conclusion based strictly on the evidence and not on matters not admitted in evidence. *Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App.1980).

The objections made by the appellant could have been more specific, but were adequate because the error was obvious. *See Roeder v. State,* 688 S.W.2d 856, 859 (Tex.Crim.App.1985). A general misunderstanding by the public of why evidence is sometimes excluded needs no contribution from members of the bar. Similar conduct serves to undermine the entire legal system, potentially depriving all citizens of life, liberty, and the assurance of due process of law. I would sustain ground of error four and reverse and remand the cause for a new trial.