

## NUMBER 13-13-00650-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**MIGUEL ANGEL AGUILERA,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                 **Appellee.**

---

**On appeal from the 138th District Court
of Cameron County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Chief Justice Valdez**

A jury found appellant Miguel Angel Aguilera guilty of first-degree aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West, Westlaw through 2015 R.S.). By eight issues, which we have reorganized, Aguilera contends: (1) the evidence is legally insufficient to prove that S.G., the complainant, was under six years of age at the time of the offense [issue seven]; (2) the trial court erred in admitting the

testimony of the State's outcry witness [issue one]; (3) the trial court erred in finding that S.G. was competent to testify [issue three]; (4) the trial court erred in allowing the State to ask S.G. leading questions on direct examination [issue four]; (5) the trial court erred in admitting S.G.'s video statement as a prior consistent statement under Texas rule of evidence 801(e)(1)(B) [issue two]; (6) the evidence is legally insufficient to satisfy the "penetration" element of aggravated sexual assault of a child [issue eight]; (7) the trial court erred in admitting a nurse examiner's medical report, which contained hearsay statements of S.G. and S.G.'s mother under Texas rule of evidence 803(4) [issue five]; and (8) the State violated Aguilera's equal protection rights under *Batson v. Kentucky*, 476 U.S. 79 (1986) by peremptorily striking a disproportionate number of men from the venire [issue six]. We affirm.

## I. Background

On December 13, 2012, S.G. made an outcry that her mother's ex-boyfriend, Aguilera, sexually assaulted her at his house. Following S.G.'s outcry, Aguilera was arrested and charged by way of an indictment with sexually assaulting S.G. The State's indictment specifically alleged that on or about March 31, 2012, Aguilera "intentionally or knowingly caus[ed] the penetration of the sexual organ of S.G., a pseudonym, a child who was then and there younger than 6 years of age, by [Aguilera's] finger." Aguilera pleaded not guilty to this charge, and the case was called for a jury trial.

At trial, the State admitted Aguilera's written statement into evidence, wherein he confessed that:

> Around March or April of 2012[,] I was living with [S.G.'s mother and S.G.] at the Villa Madre [Apartments] # 206. One night I was watching T.V. on the sofa when [S.G.] came and sat on my lap. . . . I started to get arouse[d] and put her panties aside and I placed my right hand middle finger inside

2

her vagina. It was only in there for about 5 seconds because [S.G.] said it hurt. I panic[ed] and took out my finger and told her to go to her mom who was in the room asleep.

Also presented at trial was the testimony of S.G., who identified Aguilera by his first name (Miguel) and, while pointing to a diagram depicting a female sexual organ, testified that Aguilera touched her "part" with his hand. Over Aguilera's hearsay objection, the State also presented the testimony of its outcry witness, Melissa Cardenas, who testified that it was during an after-school visit with S.G. and S.G.'s mother on December 13, 2012 that S.G confided in her that Aguilera put his "fingernails" in her female sexual organ and that this happened at Aguilera's house. Over another hearsay objection by Aguilera, the State admitted a video statement that S.G. made on December 14, 2012 to Joanna Frausto, a forensic interviewer with the children's advocacy center, wherein S.G. related that Aguilera sexually abused her. Later at trial, the State admitted a redacted version of a medical report prepared by a forensic nurse who examined S.G. after she made her outcry to Cardenas. On page twelve of this medical report, S.G. and S.G.'s mother are quoted relating details to the nurse concerning the timing and the nature of the sexual abuse.

After presentation of all the evidence, the jury found Aguilera guilty of aggravated sexual assault of a child under the age of six as charged in the indictment. Aguilera elected to have the trial court assess punishment, and the judge sentenced him to thirty-three years' imprisonment. This appeal followed.

## II. Discussion

### A. Legal Sufficiency

3

By his seventh issue, Aguilera contends that the evidence is legally insufficient to prove that S.G. was under the age of six when he sexually assaulted her. In reviewing the legal sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the prosecution and then ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010). Under this standard of review, the jury is the "exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the sexual organ of a child under the age of six, by any means. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iv). In this case, the indictment alleged that Aguilera sexually assaulted S.G. "on or about March 31, 2012." Thus, in order to satisfy the age element of this offense, the State had to present evidence that S.G. was under the age of six "on or about March 31, 2012." Here, the jury heard undisputed evidence that S.G. was born on June 6, 2006, allowing them to reasonably infer that S.G. was five years of age on or about March 31, 2012. Furthermore, Aguilera confessed that the sexual abuse occurred "[a]round March or April 2012," which was before S.G.'s sixth birthday in June of that year.[1] Therefore, we conclude that the jury, as a rational trier of fact, could have determined that the abuse described by S.G. and confessed to by Aguilera occurred when S.G. was under the age

---

[1] Aguilera argues that the trial court should have made an affirmative finding that S.G. was under the age of six. However, he provides no authority to support this proposition, and we find none.

4

of six.  *See Brooks*, 323 S.W.3d at 902 n.19; *see also Dekneef v. State*, 379 S.W.3d 423, 429 (Tex. App.—Amarillo 2012, pet. ref'd) (finding the evidence sufficient to support the jury's verdict that the victim was under the age of six based on evidence of the victim's date of birth, coupled with other evidence that the victim was still under the age of six when the defendant moved out of the house where the sexual abuse occurred).  We overrule Aguilera's seventh issue.

### B.   Outcry Witness

By his first issue, Aguilera contends that the trial court should have excluded Cardenas' testimony concerning S.G.'s December 13, 2012 outcry because the State failed to provide him sufficient notice of its intent to call Cardenas as an outcry witness pursuant to Texas code of criminal procedure article 38.072.  See TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a), (b) (West, Westlaw through 2015 R.S.).  Aguilera argues that because the State's notice was deficient, Cardenas' outcry testimony was not admissible under article 38.072 and therefore constituted inadmissible hearsay.

### 1.   Applicable Law and Standard of Review

There is no dispute that S.G.'s December 13, 2012 outcry to Cardenas was hearsay.  Hearsay statements are not admissible in Texas unless otherwise provided by the rules of evidence or by statute.  *See* TEX. R. EVID. 802.  Article 38.072 creates a statutory exception to the rule against hearsay for statements of child-abuse victims if certain conditions are met.  *Davidson v. State*, 80 S.W.3d 132, 135–36 (Tex. App.— Texarkana 2002, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art. 38.072).  Article 38.072 provides that in sexual offense cases committed against a child, a statement that was made by the child to the first adult about the offense will not be inadmissible because

5

of the hearsay rule. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1)(A). In order for this hearsay exception to apply, the State must notify the defendant of its intention to offer such statement on or before the fourteenth day before trial begins. *Id.* The purpose of this fourteen-day requirement is to avoid surprising the defendant with the introduction of outcry hearsay testimony. *See Gay v. State*, 981 S.W.2d 864, 866 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). To achieve this purpose, the State must provide the name of the witness through whom it intends to offer the child's statement and a written summary of the statement. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1)(C)–(D); *Davidson,* 80 S.W.3d at 136. The notice is sufficient if it reasonably informs the defendant of the essential facts related in the outcry statement. *Davidson*, 80 S.W.3d at 136. The trial court has broad discretion to determine whether a child's statement is admissible under article 38.072. *See Reed v. State*, 974 S.W.2d 838, 841 (Tex. App.—San Antonio 1998, pet. ref'd). The exercise of that discretion will not be disturbed on appeal unless the record shows a clear abuse of discretion. *Id.*

### 2. Analysis

The record in this case shows that more than fourteen days before trial, the State provided written notice to Aguilera of its intention to offer S.G.'s outcry statement through Cardenas. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1)(A). The State specifically identified Cardenas by name in its notice and also provided a written summary of the outcry S.G made to her on December 13, 2012. *See id.* art. 38.072, § 2(b)(1)(C)–(D). Aguilera does not argue on appeal that the State's notice suffered from any deficiency of substance or otherwise failed to inform him of the essential facts concerning S.G.'s outcry to Cardenas. Instead, Aguilera argues that the State's notice caught him

6

by surprise because it also contained a summary of S.G.'s video statement to Joanna Frausto at the children's advocacy center on December 14, 2012, which, in relevant substance, repeated the outcry that S.G. made to Cardenas the day before. Aguilera asserts that by identifying both Cardenas and Frausto as outcry witnesses for the same sexual conduct alleged, the State's notice failed to identify the first adult to whom S.G. made an outcry. However, the State's notice indicates that on December 13, 2012, S.G. told Cardenas what Aguilera had done to her and that she repeated it to Frausto the next day. Because there was never any confusion as to the sequential order of S.G.'s outcries in the State's notice, we cannot agree with Aguilera that the State failed to identify the first adult to whom S.G. made an outcry. Furthermore, Aguilera provides no authority to support his argument that the State fails to give proper notice under article 38.072 when it identifies two possible outcry witnesses in sequential order for the same conduct alleged, and we find none. We therefore conclude that the trial court did not abuse its discretion in finding that S.G.'s outcry to Cardenas, though hearsay, was admissible under article 38.072. *See* TEX. R. EVID. 802; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.072. We overrule Aguilera's first issue.

## C.    S.G.'s Competence to Testify

By his third issue, Aguilera contends that the trial court erred in finding that S.G. was competent to testify.

Texas rule of evidence 601(a) states that "[e]very person is competent to be a witness" unless otherwise excluded under the rule. TEX. R. EVID. 601(a). Rule 601(a) further states that "persons lacking sufficient intellect" are incompetent to testify, including a child "whom the court examines and finds lacks sufficient intellect to testify concerning

7

the matters in issue." *Id.* Three elements must be considered by a reviewing court in determining whether a child witness is competent to testify: (1) the competence to observe intelligently the events in question at the time of their occurrence; (2) the capacity to recollect the events; and (3) the capacity to narrate them, which involves the ability to understand questions asked and to frame intelligent answers, and the ability to understand the moral responsibility to tell the truth. *Reyna v. State*, 797 S.W.2d 189, 191–92 (Tex. App.—Corpus Christi 1990, no pet.); *Hollinger v. State*, 911 S.W.2d 35, 39 (Tex. App.—Tyler 1995, pet. ref'd). The determination of a trial court that a child witness is competent to testify is reviewed for an abuse of discretion. *See Reyna*, 797 S.W.2d at 191. In conducting this review, we must consider all the testimony of the child witness, including any testimony at a competency hearing. *Id.*

Here, S.G. was seven years of age at the time of trial and five years of age at the time of the offense. *See Hollinger*, 911 S.W.2d at 38 (holding that the child, who was four years of age at the time of trial, was competent to testify about being victimized when he was three years of age). S.G. knew her name, her age, her hometown, the name of her first-grade teacher, and she knew the difference between the truth and a lie. *See id.* (concluding that a child was competent to testify after correctly answering questions concerning his family, his name, his birthday, and after acknowledging the difference between the truth and a lie). Furthermore, during questioning about the events giving rise to the prosecution, S.G. identified Aguilera by his first name (Miguel) and recollected that he touched her "part" with his hand, which she described by circling an area of a diagram depicting a female sexual organ. *See id.* (determining that a child was competent to

testify after identifying the defendant as the one who "hurt" him and remembering that he told his mother a long time ago that defendant had hurt him).

We acknowledge that S.G. had some difficulty recalling certain events surrounding the sexual assault, such as her video statement at the child advocacy center, and she gave mostly one-to-two worded answers to the questions put to her by the trial court and the trial attorneys. However, the record also reflects that she was seven years old at the time of trial, in first grade, and being called upon to recollect a traumatic event in a courtroom setting. *See id.* (holding that the trial court did not abuse its discretion in finding that a child was competent to testify even though he did not provide much detail concerning the alleged assault).

After reviewing all of S.G.'s testimony, we hold that she was competent to intelligently observe the sexual-assault event at the time it happened; she had sufficient capacity to recollect that event; and she was able to frame intelligent, age-appropriate answers to the questions put to her by the parties while understanding the moral responsibility to tell the truth. *See id.* Therefore, we conclude that the trial court did not abuse its discretion in finding that S.G. possessed sufficient intellect to testify concerning the matters in issue. *See* TEX. R. EVID. 601(a). We overrule Aguilera's third issue.

### D.    Leading Questions to S.G. on Direct Examination

By his fourth issue, Aguilera complains that the trial court erred in overruling his objections to leading questions put to S.G. by the State during direct examination.

Texas Rule of Evidence 611(c) provides that "leading questions should not be used on direct examination *except as may be necessary to develop the testimony of the witness.*" TEX. R. EVID. 611(c) (emphasis added). The general rule against leading

9

questions is relaxed with child witnesses—particularly among those exhibiting a learning disability. *See Clark v. State*, 952 S.W.2d 882, 886 (Tex. App.—Beaumont 1997, no pet.) (citing *Moon v. State*, 856 S.W.2d 276, 279 (Tex. App.—Fort Worth 1993, pet. ref'd)); *In re J.A.W.*, 976 S.W.2d 260, 262 (Tex. App.—San Antonio 1998, no pet.) (holding that the trial court had the discretion to allow leading questions on the direct examination of a child in special education classes with a learning disability); *see also Trevino v. State*, 783 S.W.2d 731, 733 (Tex. App.—San Antonio 1989, no writ) (same). In such cases, courts hold that leading a child witness on direct examination is necessary to develop his or her testimony. *In re J.A.W.*, 976 S.W.2d at 262; *Trevino*, 783 S.W.2d at 733. Permitting leading questions lies within the sound discretion of the trial court, which calls for reversal on appeal only when that discretion has been abused. *Newsome v. State*, 829 S.W.2d 260, 270 (Tex. App.—Dallas 1992, no pet.); *See Hernandez v. State*, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982).

In this case, S.G. was seven years old at the time of trial, and S.G.'s mother testified that S.G. tested for special education, had a learning disability, and had to repeat the first grade. Under these circumstances, we hold that the trial court did not abuse its discretion in allowing the State to ask S.G. leading questions on direct examination in order to develop her testimony. *See Uhl v. State*, 479 S.W.2d 55, 57 (Tex. Crim. App. 1972) (holding that the "asking of leading questions will seldom be a ground for reversal especially where a child is testifying[.]"). We overrule Aguilera's fourth issue.

E.      **S.G.'s Video Statement to Joanna Frausto as a Prior Consistent Statement**

By his second issue, Aguilera contends that the trial court erred in admitting S.G.'s December 14, 2012 video statement to Frausto at the children's advocacy center as a

prior consistent statement under Texas rule of evidence 801(e)(1)(B). *See* TEX. R. EVID. 801(e)(1)(B). We review a trial court's determination that a prior consistent statement is admissible under rule 801(e)(1)(B) for an abuse of discretion. *See Hammons v. State*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007). Under this standard, we must affirm the trial court unless the decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

The relevant facts are as follows. At trial, S.G. testified on direct examination that Aguilera touched her "part" with his hand. On cross examination, Aguilera asked S.G. to recount the number of times she met with each attorney representing the State before trial; S.G. answered "10 times" as to each State's attorney. On re-direct, the State moved to admit S.G.'s December 14, 2012 video statement at the children's advocacy center, in which S.G. related that Aguilera sexually abused her. Over Aguilera's hearsay objection, the trial court admitted S.G.'s video statement as a prior consistent statement under Texas rule of evidence 801(e)(1)(B). *See* TEX. R. EVID. 801(e)(1)(B) (providing that a prior consistent statement of a testifying witness is not hearsay if it is offered to rebut an express or implied charge that the witness acted from a recent improper influence or motive in so testifying).

To be admissible under rule 801(e)(1)(B), S.G.'s video statement had to meet the following four requirements: (1) S.G. testified at trial and was subject to cross examination; (2) Aguilera expressly or impliedly accused S.G. of being improperly influenced or motivated to provide testimony substantiating the allegation of sexual abuse contained in the State's indictment; (3) S.G.'s video statement was consistent with her in-court testimony; and (4) S.G.'s video statement was made prior to the time that the

11

supposed improper influence or motive to testify arose. *See* TEX. R. EVID. 801(e)(1)(B); *see also Hammons*, 239 S.W.3d at 804 (citing rule 801(e)(1)(B)). Here, S.G. testified at trial and was subject to cross-examination (first requirement); her testimony concerning sexual abuse was generally consistent with her video statement (third requirement); and her video statement was made before the State's attorneys met with her to prepare for trial (fourth requirement). However, the question for our review concerns the second requirement—specifically, whether Aguilera's cross examination of S.G. regarding the number of times she met with the State's attorneys impliedly accused S.G. of being improperly influenced or motivated by the State's attorneys to provide testimony substantiating the allegation of sexual abuse contained in the State's indictment.

To determine whether cross examination of a witness makes an implied charge of improper influence or motive sufficient to satisfy the second requirement, we focus on the "purpose of the impeaching party, the surrounding circumstances, and the interpretation put on them by the trial court." *Hammons*, 239 S.W.3d at 808. We also consider the totality of the questioning, give deference to the trial judge's assessment of the tone and tenor of the questioning, and look for "clues" from the impeaching party's voir dire, opening statement, and closing argument that might reveal whether the cross examination at issue made an implied charge of improper influence or motive. *See id.*

Here, the circumstances surrounding Aguilera's cross examination support a finding that he made an implied charge of improper influence or motive by inquiring into the number of times S.G. had met with the State's attorneys prior to trial. The record shows that before cross examining S.G., Aguilera sought to have the trial court deem S.G. incompetent to testify, in large part, because she was only able to respond to leading

12

questions and could not answer anything without being "prompted." The record also shows that after Aguilera was unsuccessful in deeming S.G. incompetent to testify, the first major topic he explored on cross examination was whether she had ever met with the State's attorneys and, if so, how many times. When S.G. answered that she had met with the State's attorneys ten times prior to trial, Aguilera sowed the seed of innuendo by asking her to agree that ten meetings with the State represented "a bunch" of meetings— a seed which came to full fruition during closing argument when Aguilera suggested, not so subtly, that these "multiple" meetings might have influenced S.G. to testify about sexual abuse that never actually occurred simply to please the State's attorneys. Under these circumstances, we cannot say that the trial court abused its discretion in finding that the State was allowed to show the jury that it was not S.G.'s meetings with the State's attorneys that caused her to testify about sexual abuse because she had said the same thing in a video statement before the meetings occurred. *See id.* (observing that the defendant sowed the "seed of innuendo" by subtly implying on cross examination that the sexual-assault victim's civil attorney improperly influenced her recollection of certain events in the criminal trial—a seed which, according to the court of criminal appeals, "came to full fruition" during closing argument when the defendant expressly accused the victim of fabricating evidence with her civil attorney). We conclude that the trial court did not abuse its discretion in finding that S.G.'s video statement met all four elements under rule 801(e)(1)(B) and therefore was properly admissible as a prior consistent statement. *See id.* We overrule Aguilera's second issue.[2]

---

[2] By his eighth issue, Aguilera contends that the evidence would be legally insufficient to support the "penetration" element of aggravated sexual assault of a child "if" we find that the trial court erred in admitting S.G.'s December 13, 2012 outcry to Cardenas and her December 14, 2102 video statement to Frausto into evidence. First, Aguilera's eighth issue is moot because, as we discussed above, the trial

## F.    Medical Report

By his fifth issue, Aguilera contends that the trial court erred in admitting a forensic nurse's medical report, which contained hearsay statements of S.G. and S.G.'s mother concerning the timing and the nature of the sexual abuse alleged. The complained-of statements appear on page twelve of the report, wherein the forensic nurse quotes verbatim the following statements that S.G. and S.G.'s mother made to her:

| | |
|---|---|
| [S.G.] states: | Miguel.  He touched that part ([S.G.] indicates female sexual organ by pointing).  With his one hand.  On top of the clothes and under the clothes.  Not inside.  I was asleep and then he touched me.  I woke up and he was here (patient indicates placement with hand) and I was here (patient demonstrates by moving hand toward her).  I told my mom.  It was a long time ago.  When we were living with him. |

. . . .

| | |
|---|---|
| [S.G.'s mother] states: | [S.G.] told my sister and her cousin that [Aguilera] had touched her again.  She hasn't told me anything.  I asked why she didn't tell me and she said she was scared she was going to get spanked. |

Aguilera contends that because S.G. and S.G.'s mother did not make these statements for the purpose of medical diagnosis of treatment, they fell outside the applicable hearsay exception for those types of statements under Texas rule of evidence

---

court properly admitted S.G.'s statements to Cardenas and Frausto.  And second, more importantly, Aguilera's eighth issue would invite misapplication of the legal sufficiency standard.  It is well settled law that in reviewing a legal sufficiency point, we must consider *all* the evidence admitted at trial—even the erroneously admitted evidence.  *See Roeder v. State*, 688 S.W.2d 856, 859 (Tex. Crim. App. 1985).  As such, whether improperly admitted or not, we would have to consider S.G.'s statements to Cardenas and Frausto in reviewing the legal sufficiency of the evidence to support the penetration element of aggravated sexual assault of a child.  Therefore, we summarily overrule Aguilera's eighth issue.  *See id.* (summarily refusing to consider defendant's issue because it would invite misapplication of the legal sufficiency standard).

14

803(4).  *See* TEX. R. EVID. 803(4) (providing that statements made for medical diagnosis or treatment are admissible as an exception to hearsay).  However, by not objecting to or obtaining a ruling on the admissibility of these statements at trial, Aguilera waived this issue for our review.

The record reflects that when the State sought to admit an original version of the forensic nurse's report into evidence, Aguilera objected on hearsay grounds.  The trial court then made redactions responsive to Aguilera's objection.  The record further reflects that after the trial court redacted the report, Aguilera reviewed it and affirmatively stated that he had "no objection to it as redacted[.]"  The trial court then admitted the redacted report into evidence, which contained the complained-of statements quoted above.  Thus, not only did Aguilera fail to object to the admissibility of the statements about which he now complains, the record shows that he affirmatively stated that he had "no objection" to them.  *See Bunton v. State*, 136 S.W.3d 355, 366 (Tex. App.—Austin 2004, pet. ref'd) (holding that appellate complaints concerning the admissibility of evidence must be preserved by proper objection at trial).  And to the extent that Aguilera challenges the correctness of the trial court's redactions on appeal, he has waived the complaint by failing to object or obtain an adverse ruling from the trial court on that basis.  *See* TEX. R. APP. P. 33.1(a) (providing that the appellant must preserve an appellate complaint in the trial court by making a timely objection that states the grounds for the complaint and by securing an adverse ruling on those grounds).  We therefore overrule Aguilera's fifth issue.

**G.    The *Batson* Challenge**

15

By his sixth issue, Aguilera contends that the State violated his equal protection rights under *Batson v. Kentucky* by peremptorily striking a disproportionate number of men from the venire.  See 476 U.S. 79 (1986).  The State responds that Aguilera did not preserve this issue for appellate review.  We agree with the State.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids a prosecutor to peremptorily challenge potential jurors solely on account of their race or gender.  *See id.* at 89 (prohibiting the use of preemptory strikes based on race); *see also J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) (prohibiting the use of preemptory strikes based on gender).  A challenge raised under this constitutional prohibition is commonly referred to as a "*Batson* challenge."  *See generally Batson*, 476 U.S. at 89.  Each state is responsible for implementing the constitutional prohibition recognized in *Batson*.  *See id.* at 100 n.24.

To codify and implement this prohibition in Texas, the Legislature enacted article 35.261 of the Texas code of criminal procedure.  *See Hill v. State*, 827 S.W.2d 860, 863 (Tex. Crim. App. 1992).  Under article 35.261, a defendant making a *Batson* challenge must do so "before the court has impanelled the jury"—otherwise, courts consider the challenge forfeited as untimely.  *See Yarborough v. State*, 947 S.W.2d 892, 899 (Tex. Crim. App. 1997); *Alexander v. State*, 866 S.W.2d 1 n.8 (Tex. Crim. App. 1993); *Hill*, 827 S.W.2d at 863; *Cooper v. State*, 791 S.W.2d 80 (Tex. Crim. App. 1990); *Woods v. State*, 301 S.W.3d 327, 336 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Saldivar v. State*, 980 S.W.2d 475, 482–84 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd); *Redman v. State*, 848 S.W.2d 710, 715 (Tex. App.—Tyler 1992, no pet.); *Bucciarelli v. State*, 793 S.W.2d 289, 291 (Tex. App.—Corpus Christi 1990, pet. ref'd).  A jury is "impanelled" when

16

the members of the jury have been selected and sworn.  *See Hill*, 827 S.W.2d at 864.

Here, the record clearly reflects that Aguilera made his *Batson* challenge after the jury

had been selected and sworn.  Therefore, Aguilera failed to preserve his sixth issue for

appellate review.  *See Hill*, 827 S.W.2d at 864; *Saldivar*, 980 S.W.2d at 482–84.  We

overrule Aguilera's sixth issue.

### III.    Conclusion

We affirm Aguilera's conviction.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
24th day of November, 2015.